STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
WILLIAM F. GARVIN, DEFENDANT-APPELLANT.

Argued January 5, 1965—Decided March 22, 1965.

*Mr. Andrew L. Kaufman* argued the cause for appellant.

*Mr. John G. Graham,* Assistant Prosecutor, argued the cause for respondent (*Mr. C. William Caruso,* Assistant Prosecutor, on the brief; *Mr. Brendan T. Byrne,* Essex County Prosecutor, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendant was convicted of larceny in violation of *N. J. S.* 2A:119–2. He appeals from the conviction and from orders denying two post-conviction applications. We certified the appeals before argument in the Appellate Division.

The offense charged involves a familiar pattern of larceny by trick, committed in the City of Newark. The State contended that defendant posed as a stranger with considerable cash in pocket and, assisted by an accomplice who pretended to have just happened along, led the victim to withdraw the balance of his savings account, thereby to persuade defendant that banks are places of safe deposit. The victim's cash, totaling $405, was purportedly wrapped with defendant's cash in a handkerchief and left with the victim for interim holding. There had been a switch; the handkerchief held newspaper.

Defendant denied all, saying he was never in the City of Newark and claiming that while he did not know precisely where he was at the time of the offense, he was somewhere in Philadelphia, where he lived.

## I.

There were but two witnesses at the trial, the victim and the defendant. Defendant attacks the verdict as against

the weight of the evidence. He stresses some strangeness in the testimony of the victim, but this is not surprising of one who could be swindled so easily. We are not persuaded that the jury's verdict is infected with mistake, passion, prejudice or partiality. *R. R.* 1:5–1(a); *State v. Forcella*, 35 *N. J.* 168, 175 (1961), *cert.* denied 369 *U. S.* 866, 82 *S. Ct.* 1035, 8 *L. Ed.* 2d 86 (1962).

## II.

Defendant complains of the failure of the trial court to charge specially on the subject of alibi. There was neither a request to charge nor an objection to the failure to charge on the subject, but defendant, through counsel assigned to represent him on this appeal, asserts the trial court's omission was sufficiently grievous to be available on appeal as "plain error." *R. R.* 1:5–1(a); *State v. Williams*, 39 *N. J.* 471, 485 (1963), *cert.* denied 374 *U. S.* 855, 83 *S. Ct.* 1924, 10 *L. Ed.* 2d 1075 (1963). He relies upon *State v. Searles*, 82 *N. J. Super.* 210 (*App. Div.* 1964), where it was held to be plain error for the trial court not to have charged on the subject of alibi on its own motion.

Alibi is not a "separate" defense. It is part and parcel of a direct denial of the State's charge whenever the defendant's physical presence at a given time and place is a critical part of the prosecution's case. *R. R.* 3:5–9(a) provides:

"If a defendant is to rely in any way on an alibi, he shall, on written demand of the prosecuting attorney, furnish a written bill of particulars, signed by him, and stating the specific place or places at which the defendant claims to have been at the time of the alleged offense, and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi. Such particulars shall be furnished the prosecuting attorney within 10 days from the service of such demand."

The rule so provides, not on the thesis that alibi is a separate defense as distinguished from a denial of a part of the case the State must prove, but rather to avoid surprise at trial by

the sudden introduction of a factual claim which cannot be investigated unless the trial is recessed to that end.

The subject of alibi has commanded an inordinate amount of judicial consideration. Perhaps the reason is that at one time some courts thought of alibi as a separate defense and charged the jury that the defendant had the burden of proof with respect to it. See Annotations, 118 *A. L. R.* 1303, 1304 (1939); 29 *A. L. R.* 1127, 1139 (1924); 124 *A. L. R.* 471, 474 (1940). That error crept into the charge in *Sherlock v. State*, 60 *N. J. L.* 31 *(Sup. Ct.* 1897); *State v. MacQueen*, 69 *N. J. L.* 522, 531 *(Sup. Ct.* 1903); *State v. Parks*, 96 *N. J. L.* 360 *(Sup. Ct.* 1921), and was thought to be implicit in the charge given in *State v. DeGeralmo*, 83 *N. J. L.* 135, 138 *(Sup. Ct.* 1912). But it is now perfectly clear in our State that alibi is merely a direct denial of the State's charge; and that being so, it is not apparent why such testimony should be dealt with differently from any other direct denial of the State's allegations.

Indeed the very discussion of alibi as something apart from a direct denial of the truth of the State's case tends to obscure its role and to suggest a defendant has some special responsibility with respect to it. See, for example, the cumbersome explanation to the jury which passed muster in *State v. Kee*, 7 *N. J. Misc.* 676, 147 *A.* 49 *(Sup. Ct.* 1929), and again on further review in 106 *N. J. L.* 336 *(E. & A.* 1930). *Cf. State v. Thomas*, 11 *N. J. Misc.* 157, 158, 165 *A.* 101 *(Sup. Ct.* 1933), affirmed o. b. 111 *N. J. L.* 239 *(E. & A.* 1933).

Moreover, so long as alibi is thought to command special treatment, there will be unrewarding questions as to what constitutes an alibi and the sufficiency of evidence to raise the issue. *Cf. State v. Mucci*, 25 *N. J.* 423, 430–32 (1957); *State v. Smith*, 43 *N. J.* 67, 80–81 (1964), *cert.* denied 379 *U. S.* 1005, 85 *S. Ct.* 731, 13 *L. Ed. 2d* 706 (1965); *State v. Driver*, 38 *N. J.* 255, 290 (1962). For example, how precise must a defendant's claim be? *R. R.* 3:5–9(a), quoted above, requires a bill of particulars "stating the specific place or places at which the defendant claims to have been at the time

of the alleged offense, and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi." The defendant in our case, in response to the State's demand under this rule, replied that he could not comply because of "the immense variation in the time and place of the alleged crime." In other words, he was unable to pinpoint his presence at the time of the crime at a place so distant that he could not physically have been the culprit. He could say only that he was somewhere in Philadelphia and not in Newark. Is that an alibi? *Cf. Commonwealth v. McQueen*, 178 *Pa. Super.* 38, 112 *A. 2d* 820 (*Super. Ct.* 1955). Is it any more or less an alibi if a defendant says he was not at the scene of the crime when it occurred but hasn't the faintest idea where he was?

■ It seems to us that all of this is quite unnecessary. There is no need to speak of alibi in such separate terms, and indeed to do so will more likely obscure the case than clarify it. The important thing is to make it plain to jurors that to convict they must be satisfied upon a consideration of all of the evidence that guilt has been established beyond a reasonable doubt. If a defendant's factual claim is laid beside the State's and the jury understands that a reasonable doubt may arise out of the defense testimony as well as the State's, the jury has the issue in plain, unconfusing terms. If events at the trial should be thought to suggest to the jury that the defendant has the burden of proving he could not physically have committed the crime, then of course the trial court should dissipate that danger by telling the jury that the defendant does not have the burden of proving where he was at the critical time and that evidence offered on that score is to be considered with all the proof in deciding whether there is a reasonable doubt as to guilt.

In the case before us, there was no room for misunderstanding. There was no intimation that defendant had to prove he was in Philadelphia or that he had the burden to create a reasonable doubt or that a reasonable doubt could not arise from his testimony. The trial court made it plain that the

burden of proof was upon the State to establish guilt beyond a reasonable doubt upon the entire case. The factual issue was simple, and it was left to the jury in clear terms.

■ Defendant lays the charge given in *Searles, supra,* 82 *N. J. Super.* 210, alongside the charge in the case on hand, to make the point that they are essentially the same and that since the charge in *Searles* was so inadequate as to be "plain error," it should follow the charge here was equally deficient. In that case the Appellate Division thought "[t]he jury was thus left free to assume that the burden of proving alibi was on defendant" (82 *N. J. Super.,* at *p.* 214). Whether that estimate was warranted by the total record in *Searles* we do not know since the case was not brought to us for review. We know that no such danger is evident in the record before us. Hence we cannot find plain error, and we add that elsewhere it is usually held not to be error to omit to charge specially upon alibi in the absence of a request. Annotation, 118 *A. L. R.* 1303, 1304 (1939) ; *cf. State v. DeGeralmo, supra,* 83 *N. J. L.* 135.

### III.

■ Defendant asserts a number of grounds arising out of proof of his prior convictions, elicited on cross-examination of him. There was no objection at any point, and the complaints are now tendered for the first time, as "plain error." This cross-examination was authorized by *N. J. S.* 2A:81–12 :

"For the purpose of affecting the credibility of any witness, his interest in the result of the action, proceeding or matter or his conviction of any crime may be shown by examination or otherwise, and his answers may be contradicted by other evidence. Conviction of crime may be proved by the production of the record thereof, but no conviction of an offender shall be received in evidence against him in a civil action to prove the truth of the facts upon which the conviction was based."

### A.

■ Defendant first charges the revelation of his criminal record denied him due process of law. The same claim was

rejected in *State v. Brown*, 41 *N. J.* 590 (1964), *cert.* denied 377 *U. S.* 981, 84 *S. Ct.* 1888, 12 *L. Ed.* 2d 749 (1964). We repeat from that opinion (at *pp.* 591–92):

> "Our statute, *N. J. S.* 2A:81–12, *N. J. S. A.* permits proof of conviction of any crime for the purpose of 'affecting credibility.' The justice of this approach has been questioned and *Rule* 21 of the *Uniform Rules of Evidence* would ban such proof against a defendant unless he introduces evidence admissible solely to support his credibility. See *State v. Holley*, 34 *N. J.* 9, 14 (1961), *cert.* denied 368 *U. S.* 854, 82 *S. Ct.* 89, 7 *L. Ed.* 2d 51 (1961). What we have here is an area in which fair-minded men can disagree. The points of view could range from the proposition that a conviction should not be provable in any circumstances to the proposition that a conviction for a similar offense should be given at least a corroborative role in the State's case because of an inherent and rational probative force, indeed the very force which the defendant here fears. The issue, however, is not of constitutional dimension. The due process clause cannot be invoked merely because the 'fairness' of some proposition of law is in question. The Fourteenth Amendment was not intended to subsume the vast body of local law and to articulate answers of constitutional strength and durability with respect to it."

## B.

Next defendant urges that his right against self-incrimination was impaired by the combination of *N. J. S.* 2A:81–12 permitting proof of defendant's criminal record and our rule permitting comment upon the failure of a defendant to take the stand.

Our cases do not permit an inference of "guilt" from a failure to testify, but do permit the jury to infer the accused was unable to deny the truth of those inculpatory facts which could be met by his own testimony. *State v. Corby*, 28 *N. J.* 106 (1958). The rule is now codified in *N. J. S* 2A:84A–17(4).[1]

---

[1] The statute reads:

"If an accused in a criminal action does not testify after direct evidence is received of facts which tend to prove some element of the crime and which facts, if untrue, he could disprove by his own testimony, counsel and the judge may comment on his failure to testify, and the trier of fact may draw an inference that accused cannot truthfully deny those facts."

Defendant's complaint is essentially the same one raised in *State v. Brown, supra,* as to which we said, 41 *N. J.,* at *p.* 591:

"Defendant claims he was denied due process of law in violation of the Federal and State Constitutions in that when he testified in his own defense, he was compelled to admit convictions of crimes including a narcotics offense. His argument is that since under the state of proof his failure to testify would have permitted comment against him, *State v. Corby,* 28 *N. J.* 106 (1958), he was under compulsion to take the stand, and having yielded to that force, he was then compelled to admit a prior offense of a related nature which must have influenced the jury's consideration of the issue of guilt despite the trial court's instruction that such convictions bear only upon credibility. Thus defendant says the two rules placed him in a vise which the Constitution forbids.

We note that the dilemma laid before us exists as well in a State which prohibits all comment upon the failure of a defendant to testify if the State also permits cross-examination as to prior convictions. There too a defendant may feel obliged to take the stand for fear that an inference of guilt will be drawn despite an instruction to the jury that none should be drawn, and thus the defendant must risk a prohibited inference whether he does or does not take the stand. See *McCormick, Evidence* § 43, *pp.* 93–94 (1954). In other words, the attack is really upon the proposition that a defendant may be cross-examined as to a criminal record."

After defendant's main brief was filed, *Malloy v. Hogan,* 378 *U. S.* 1, 84 *S. Ct.* 1489, 12 *L. Ed. 2d* 653 (1964), was decided. Defendant asks that the result reached in *Brown* be reconsidered in the light of *Malloy.* More specifically defendant says (1) *Malloy* prohibits the comment which *Corby* permitted, and (2) it should be found that the mere existence of the *Corby* rule resulted in unlawful pressure upon defendant to take the stand. This argument, if sound, is not peculiarly applicable to a defendant with a criminal record; it would be as valid where for any other reason a defendant might have preferred to be silent. Thus the issue as now pressed differs from the one initially advanced. For the reasons which will appear, we do not find in it a basis for reversal.

Overruling prior decisions, *Malloy* held the States are bound by the provision of the Fifth Amendment that no person "shall be compelled in any criminal case to be a witness

against himself." In *Malloy* that prohibition was literally involved since the defendant was punished for contempt for refusing to testify. Of course no such punishment or threat of it was visited upon the defendant in the case before us. Nor was defendant subjected to the *Corby* comment, since in fact he testified. Nonetheless, as we have said, defendant contends the mere threat of the *Corby* comment was enough.

The record nowhere indicates defendant took the stand because of the *Corby* rule rather than because of the compelling testimony against him. Nor is there any fund of experience from which we could find that an accused situated as was defendant would likely stay off the stand if comment were prohibited. Indeed, defendant does not suggest a basis for such a finding. On the contrary defendant contends it is of no moment what he would or would not have done in the absence of *Corby*. He says the Fifth Amendment was violated because he did not have an opportunity in an atmosphere free of the compulsion of *Corby* to decide whether to testify. If that view is correct, it would follow that virtually every man ever convicted in a State which permits comment was denied his Fifth Amendment guaranty whether he took the stand or did not. It seems to us that upon any reasonable view of human behavior that conclusion would be extravagant.

We must start with a realization that the right against self-incrimination is not a guaranty against any and all coercion to testify. The criminal trial itself is inherently coercive. A defendant would rather be home with his slippers but he cannot be because of the prosecution. When he takes the stand, he does so because he must to avoid the conviction the State seeks. We assume no one would seriously suggest that because of such compulsion the Fifth Amendment bars cross-examination of a defendant or the use against him of anything he says on direct. The constitutional right is to remain silent; it does not shield a defendant from the evidence against him or the compulsion it generates. *Cf. United States v. Gainey,* 380 *U. S.* ——, 85 *S. Ct.* 754, 13 *L. Ed. 2d* 658 (1965).

When the State's case points an accusing finger directly at a defendant, common sense demands that he testify if in truth he is able to fend off the evidence against him. Neither the absence of comment nor an instruction against an adverse inference can dilute the inculpatory force of uncontradicted evidence of that character. This is the situation which confronted defendant in the case at hand. It would be sheer speculation to say that but for *Corby* he likely would have permitted the pointed testimony against him to go undenied. The great probability is that the testimony was the coercive force he could not resist.

The question of retrospective application of judge-made law is the most urgent issue of the day in the field of criminal law. The good sense of the proposition that criminal cases should be retried and retried and tried again as we change our view of what is fair or fairer is hotly disputed. Here we are asked to go further and hold that even where a defendant was not directly subjected to the rule of law in question, his conviction should nonetheless be upset so that he may choose whether to retry his case the same way or another way in the light of a new judicial determination. The resulting instability would be a heavy burden upon the judiciary and thus upon law and order. That burden should not be imposed unless the former proposition of law raises grave doubt as to the truth of the judgment of conviction. See *State v. Johnson*, 43 *N. J.* 572, 585 (1965). Where as here a defendant did testify, the worst that can be said is that his guilt was adjudged upon all the relevant proof. Fairness hardly demands that his case be retried so that his guilt may again be adjudged on the basis of all the relevant proof or at his option upon less than all of the relevant proof, *i. e.*, the State's case alone. Hence we will not undo judgments in such circumstances whether the issue is offered on appeal from the conviction as in this case or in a post-conviction proceeding.

It is accordingly unnecessary to consider (1) whether the Fifth Amendment forbids comment; and (2) whether, if it does, it forbids comment bearing upon the evaluation or

probative force of uncontradicted testimony as distinguished from a comment permitting silence to be treated as evidence of guilt; and (3) whether, if comment relating to the evaluation or probative force of the evidence on hand is permissible, the *Corby* comment is of that character. See *People v. Modesto, Cal.,* 42 *Cal. Rptr.* 417, 398 *P. 2d* 753 (*Sup. Ct.* 1965); *United States ex rel. Shott v. Tehan,* 337 *F. 2d* 990 (6 *Cir.* 1964), petition for *cert.* filed, *sub nom. Tehan v. Shott,* 33 *U. S. L. Week* 3278 (U. S. Feb. 4, 1965) (No. 877); *United States v. Elgisser,* 334 *F. 2d* 103 (2 *Cir.* 1964), *cert.* denied 379 *U. S.* 881, 85 *S. Ct.* 151, 13 *L. Ed. 2d* 87 (1964); *DeLuna v. United States,* 308 *F. 2d* 140, 151 (5 *Cir.* 1962), rehearing, 324 *F. 2d* 375 (1963); *United States v. Ragland,* 306 *F. 2d* 732 (4 *Cir.* 1962), *cert.* denied 371 *U. S.* 949, 83 *S. Ct.* 504, 9 *L. Ed. 2d* 498 (1963); *Langford v. United States,* 178 *F. 2d* 48 (9 *Cir.* 1949), *cert.* denied 339 *U. S.* 938, 70 *S. Ct.* 669, 94 *L. Ed.* 1355 (1950); *Baker v. United States,* 115 *F. 2d* 533 (8 *Cir.* 1940), *cert.* denied 312 *U. S.* 692, 61 *S. Ct.* 711, 85 *L. Ed.* 1128 (1941); *cf. United States v. Gainey, supra,* 380 *U. S.* ——, 85 *S. Ct.* 754, 13 *L. Ed. 2d* 658 (1965).

## C.

Next, defendant complains that on cross-examination with respect to prior convictions there were elicited the length of sentences and the places of incarceration. This, it is claimed, goes beyond the language of *N. J. S.* 2A:81–12, the statute quoted above, and in addition is so unfair as to deny due process of law.

The statute has consistently been construed to authorize proof by cross-examination of what the record of conviction discloses. *State v. Taylor,* 5 *N. J.* 474, 479 (1950); *State v. Merra,* 103 *N. J. L.* 361, 365 (*E. & A.* 1927); *State v. Kobylarz,* 44 *N. J. Super.* 250, 255 (*App. Div.* 1957), certif. denied 24 *N. J.* 548 (1957); *State v. Nagy,* 27 *N. J. Super.* 1, 8 (*App. Div.* 1953). If the nature of the offense for which the defendant was convicted may be shown to affect

credibility, it may well be argued that the sentence is relevant to that same end since the sentence is descriptive of the severity of the misdeed. In any event, if the sentence ought not to be shown, we do not see in it so clear a capacity to bring about an unjust result as to warrant a claim of "plain error." *State v. Williams, supra,* 39 *N. J.,* at *p.* 485. Nor, in our view, does the further circumstance that the sentence and place of confinement were shown add substance to the constitutional issue we rejected in "A" above.

### D.

Finally, it is alleged the trial court failed to make it plain to the jury that prior convictions may be used only to assay credibility.

A charge upon a topic must be considered in its entirety. We seek the understanding of a juror who listened to all of it. Thus examining the charge, we see no error or ambiguity.

### IV.

We have considered the remaining issues and find no basis for reversal.

The judgment is accordingly affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.