SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Jarrett Parker** (A-67-11) (068966)

**Argued November 28, 2013 -- Decided January 15, 2014**

**RODRÍGUEZ, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers the application of N.J.R.E. 405(a) and 608 to the introduction of evidence regarding a defendant's use of aliases in connection with two prior arrests that led to convictions.

On the evening of August 6, 2008, Catrell Robinson picked up his friend, Sharon, her sixteen-year-old sister, S.C., and Sharon's two-year-old daughter, M.A, to take them to the laundromat. Sharon placed M.A. in the back seat of Robinson's still-running Honda Accord. S.C. sat in the driver's seat and watched as Sharon and Robinson loaded laundry bags into the car. A man later identified as defendant Jarrett Parker walked by and initiated a verbal altercation with Robinson, culminating in a fistfight. A group of men who knew Parker rushed to his aid. Robinson managed to escape and ran a short distance away, but the men caught up to him, knocked him down, and kicked him. Sharon ran to help Robinson as Parker walked toward the Accord. Parker forced S.C. out of the driver's seat. Sharon and S.C. screamed that M.A. was still in the back, but Parker drove off. The car crossed a street, jumped the curb, and crashed through a fence into a field, ultimately coming to rest on a mound of dirt. Parker got out of the car and ran off. M.A. remained in the back seat and suffered no serious injuries. Parker denied taking the car.

At trial, the court ruled that the State could cross-examine Parker as to the number of counts and sentences imposed in two prior convictions, but could not reference the specific charges. Parker requested that the State be prohibited from referring to the aliases listed on the judgments of conviction. The State countered that Parker's aliases were relevant to his credibility. The court, explaining that certified court judgments are admissible, permitted the State to question Parker about his aliases because they were included in the judgments of conviction. During cross-examination, after establishing that Parker had previously lied to the police about his name when it benefited him to do so, the prosecutor asked Parker whether it also would benefit him to lie to the police about the carjacking. During summation, the State asserted that, since Parker would lie about his own name, he also would lie about taking the car and whether he knew M.A. was in the back seat. The State told the jury, "[y]ou can believe the three witnesses from the State . . . or you can accept the word of a man who's lied about his own name." Parker was found guilty of first-degree carjacking, but acquitted of first-degree kidnapping and third-degree endangering the welfare of a child. He was sentenced to a twenty-year prison term subject to an eighty-five percent parole ineligibility period and a five-year period of parole supervision.

Parker appealed, contending in part that the prosecutor's summation and references to his aliases for impeachment purposes violated N.J.R.E. 405(a) and 608 and deprived him of a fair trial. The Appellate Division affirmed the conviction and sentence, concluding that Parker was not prejudiced because his use of aliases did not imply that he belonged to a criminal class. The Court granted certification. 209 N.J. 99 (2012).

**HELD:** In accordance with N.J.R.E. 405(a) and 608, an alias which appears on a defendant's prior judgment of conviction may not be used for impeachment purposes in a future trial unless the alias was the basis for the prior conviction. Thus, the State's use of Parker's aliases to demonstrate his character for untruthfulness constituted error warranting reversal since the aliases were not the subject of his prior convictions.

1. N.J.R.E. 607 permits the introduction of extrinsic evidence affecting a witness credibility regardless of whether that evidence is relevant to any other issue in the case. Restrictions on the types of extrinsic evidence which may be introduced for impeachment purposes are set forth in N.J.R.E. 405 and 608. N.J.R.E. 405 generally provides that a witness' character may be proven by reputation evidence, evidence of opinion, or evidence of prior criminal convictions. It cannot be proven by specific instances of conduct unless that conduct was the subject of a prior

conviction. <u>N.J.R.E.</u> 608 governs the methods for proving a witness character for truthfulness or untruthfulness, restricting the permissible methods to those set forth in <u>N.J.R.E.</u> 405 and also expressly excluding the use of specific instances of conduct that are not the subject of a conviction. New Jersey case law has established that judgments of conviction may be used to prove the existence of a prior conviction. A witness may be questioned regarding all matters that would normally appear on the judgment with certain key exceptions, including probation violations and criminal charges that were dismissed as part of a plea agreement. With respect to the use of aliases, in <u>State v. Salaam</u>, 225 <u>N.J. Super.</u> 66 (App. Div.), <u>certif. denied</u>, 111 <u>N.J.</u> 609 (1988), the Appellate Division noted that the main objection to revealing a false name in a criminal prosecution is the inherent implication that the defendant belongs to a criminal class. Thus, the court found that some tangible form of prejudice must be demonstrated for reference to a false name to constitute grounds for reversal. (pp. 12-16)

2. Here, the outcome of the trial hinged almost entirely on witness credibility. Under <u>N.J.R.E.</u> 609, the State could have impeached Parker's credibility with his prior judgments of conviction without drawing attention to his aliases. Instead, the State focused on Parker's provision of false names to police officers when arrested. Because this conduct was not the subject of his prior criminal convictions, introduction of the false-name evidence was inadmissible under <u>N.J.R.E.</u> 405(a) and 608. In contrast to <u>Salaam</u>, where references to the defendant's false names were brief and the names were not used to make a substantive point or impeach credibility, the State intentionally used Parker's false names to demonstrate that his testimony should not be believed. (pp. 16-18)

3. In accordance with the <u>New Jersey Rules of Evidence</u>, the general principle is that extrinsic evidence may be used to impeach a witness testimony, <u>N.J.R.E.</u> 607, but only evidence of opinion, reputation, or a prior conviction may be used to attack a witness character for truthfulness. <u>N.J.R.E.</u> 608; <u>N.J.R.E.</u> 609. The evidence of Parker's use of false names was not provided by a third party who knew him and so does not qualify as opinion or reputation evidence. Although <u>N.J.R.E.</u> 607 alone appears to permit the State's use of Parker's false names for impeachment purposes, <u>N.J.R.E.</u> 405(a) and 608 prohibit such use unless the false names resulted in a conviction. Moreover, the State's use of Parker's false names does not qualify as evidence of a "witness' conviction of a crime" under <u>N.J.R.E.</u> 609. Only the conviction, not ancillary events such as provision of an alias to police, may be used for impeachment purposes. Finally, the mere inclusion of information on a judgment of conviction does not automatically entitle a prosecutor to use it for impeachment purposes. (pp. 19-22)

4. Here, admission of the false names evidence was error. Because the outcome of the trial depended on the jury's credibility assessments, and the State's primary attack on Parker's credibility was based on improperly admitted character evidence and closing arguments premised on such evidence, the error was not harmless. Therefore, Parker's conviction must be reversed. (pp. 22-23)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the Law Division for a new trial.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUDGE RODRÍGUEZ's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

      v.

JARRETT PARKER,

    Defendant-Appellant.


        Argued November 28, 2012 – Decided January 15, 2014

        On certification to the Superior Court, Appellate Division.

        Alyssa A. Aiello, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney).

        Stephen A. Pogany, Special Deputy Attorney General, Acting Assistant Prosecutor, argued the cause for respondent (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; Mr. Pogany and Sara A. Friedman, Special Deputy Attorney General, Acting Assistant Prosecutor, on the briefs).

        Teresa A. Blair, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Jeffrey S. Chiesa, Attorney General, attorney).

    JUDGE RODRÍGUEZ (temporarily assigned) delivered the opinion of the Court.

    N.J.R.E. 405(a) and 608 strictly prohibit the introduction of specific instances of misconduct that were not the subject of

a criminal conviction for the sole purpose of impeaching a witness' credibility. In this criminal appeal, the conviction is challenged on the grounds that, over defendant's objection, the judge permitted the State to introduce evidence that defendant used false names, pseudonyms, or aliases when arrested for prior offenses. Although these prior offenses ended in convictions, defendant was never charged and, therefore, never convicted of these specific instances of giving false information to the police. This was error. The false-name evidence was not admissible because it was evidence of two specific instances of conduct, which were not the subject of a conviction. Although the false names were shown in the judgments of conviction for other offenses, the information itself was not admissible pursuant to our caselaw and rules of evidence.

Defendant Jarrett Parker challenges his conviction for first-degree carjacking, N.J.S.A. 2C:15-2, on the grounds that the trial judge erroneously permitted the assistant prosecutor to cross-examine him regarding his use of aliases or false names in connection with two prior arrests that led to convictions. Defendant also argues that the assistant prosecutor suggested to the jury in summation that defendant's testimony was not credible due to the use of these false names in the past.

2

We conclude that the State's introduction of evidence that defendant used false names when arrested for prior unrelated offenses, combined with the assistant prosecutor's summation argument that defendant's testimony should not be believed for that reason, violates the New Jersey Rules of Evidence, specifically N.J.R.E. 405(a) and 608, as well as New Jersey caselaw. It makes no difference that the assistant prosecutor found the false-names information from certified copies of defendant's prior judgments of conviction. The information presented to the jury for impeachment purposes, that defendant allegedly lied to police about his actual name, is strictly prohibited by N.J.R.E. 405(a) and 608 because defendant was not convicted of lying to the police. The State's violation of these rules of evidence warrants reversal of defendant's convictions and a remand for a new trial.

I.

This is a summary of the evidence presented at defendant's trial for first-degree carjacking of a Honda Accord while a two-year-old child, M.A., was in the back seat. We identify M.A.'s mother by the pseudonym "Sharon" in order to keep the child's identity private.

Late in the evening on August 6, 2008, Catrell Robinson drove to Union Avenue in Irvington in order to pick up his friend, Sharon, to take her to a laundromat. Sharon had several

3

laundry bags and was accompanied by her sixteen-year-old sister, S.C. M.A. also came along. Robinson helped Sharon load the bags into his four-door 2006 Honda Accord. Sharon placed M.A. in the rear of the Accord behind the driver's seat while she and Robinson loaded the bags. The child was not secured in a car seat. S.C. climbed into the driver's seat and watched as Robinson and Sharon loaded the Accord. The rear passenger door was open and the car's engine was running.

A man, later identified as defendant, walked past Robinson. The two men stared at each other. Defendant turned around and asked Robinson, "why you looking at me like that for?" Robinson replied, "go ahead, man, nobody was looking at you." An exchange of words followed, which culminated in a fistfight between the men.

A group of six or more men, who knew defendant, rounded a nearby street corner and rushed to defendant's aid. One of the men in that group attempted to hold Robinson by the waist. Robinson shook the man off and ran a short distance down the street. The other men, including defendant, caught up to Robinson, knocked him to the ground, then kicked and stomped him.

According to Sharon, when she saw the group of men knock Robinson to the ground, she started running in their direction to help him. She then saw defendant walking towards the Accord.

4

M.A. was still in the backseat, and S.C. was in the driver's seat facing backwards. The rear passenger door was still open. Defendant then forced S.C. out of the driver's seat of the Accord and sat in it. Sharon and S.C. screamed at defendant, yelling that the two-year-old girl was still in the back seat.

Defendant drove off in the Accord, crossed Union Avenue, jumped a curb, and crashed through a fence onto a grassy field. Ultimately, the Accord got stuck on a mound of dirt and came to a stop. Defendant exited the Accord and ran off toward Chancellor Avenue. Robinson, Sharon, and her sister approached the Accord and saw that some of the laundry bags had flown out of the open rear passenger door. M.A., however, was still sitting in the back seat. She did not sustain serious injuries.

The following evening, S.C. selected defendant's photograph from an array prepared by investigating Irvington police officers. Two days later, Sharon did the same. Although Robinson gave a description of the carjacker to the police, he was not able to make a photographic identification.

After the State rested its case, the assistant prosecutor informed the judge that the State planned to cross-examine defendant regarding two prior convictions. The judge ruled that the State would be allowed to "mention the number of counts and the sentence imposed" but not the specific charges involved in the prior convictions. Defendant elected to testify and at

5

trial, his counsel requested that no reference be made to the false names listed on the judgments of conviction for those offenses. In response, the prosecutor asserted that "defendant's use of [false names] would also go towards his credibility or lack thereof. . . . The Court rule allows everything within the four corners of the [judgment of conviction] to be used."

The judge agreed, indicating that the false names were stated in certified court judgments, which are admissible. Therefore, the judge allowed the assistant prosecutor to question defendant about his prior use of different names as reflected in the judgments.

Defendant testified and admitted that he was at the scene and chased Robinson. According to defendant, he was looking for his cell phone, which he had lost in the vicinity. After his friends arrived, defendant chased Robinson and kicked Robinson for several minutes. Defendant left the scene immediately after Robinson lost consciousness. Defendant did not see anyone enter the Accord during the fight. He walked away and left the area on foot. He denied taking the Accord.

On cross-examination, the assistant prosecutor asked defendant about his prior convictions, which led to the following exchange:

6

[Assistant Prosecutor]: What's your real name?

[Defendant]: Jarrett Parker.

. . .

Q:   Okay.  I'm gonna show you what's marked S-11.  You ever go by the name Jarrod Parks?

A:   No.

Q:   You didn't use Jarrod Parks?

A:   No.  The cops -- when I was in the precinct, the cops misspelled my name.  I don't go by Jarrod Parks.

. . .

Q:   Do you know who Dashon Price is?

A:   Yes.

Q:   Who's that?

A:   That's a friend.

Q:   Oh.  It's not you?

A:   No, that's not me.

Q:   I'm showing you what's marked S-12 for identification.  You went through with counsel; you've been convicted of a crime before.  Correct?

A:   Yes.

. . .

Q:   And you were sentenced under the name Jarrett Parker a/k/a Dashon Price.  Is that correct?

A:   Yes.

7

Q: How'd that -- how did you end up getting a conviction under your friend's name?

A: I don't know how they --

Q: Cops make another mistake?

A: That was -- that conviction right there? I don't know how they said that was my a/k/a. If anything, they was supposed to have the Jarrod Parks with that, if anything.

Q: Someone else's mistake again. Right?

A: I didn't say it was mistaken, I don't know where they got that from.

Q: Well, did you lie about your name if it would benefit you?

A: Yeah. I lie about the Dashon Price before. That's my friend's name, that's what I said.

Q: So you have used another name?

A: Yeah.

Q: And you used it because it would benefit you in some way?

A: Benefit me?

Q: Well, you would say you're Dashon, obviously, because that would help you. Right?

A: Yes.

Q: Some situation where being Dashon was better than being Jarrett Parker. Right?

A: Yes.

Q: So you lied for a benefit. Right?

8

> A: Yes.
>
> Q: You're telling this jury that you did not get in a car -- Catrell Robinson's car on August 6th, 2008. Right?
>
> A: Yes.
>
> Q: That would benefit you to lie to them and say I didn't get in that car. Right?
>
> A: No.

During summation, the assistant prosecutor later made the following argument to the jury:

> Now, Jarrett Parker will lie about his own name. He was confronted with that. One of 'em was a mistake, he says, but the other one? Dashon Price? That's his friend's name and 'yeah, I've used it.' And he even admits 'I used it 'cause it benefited me.' I submit, he lied to you when he told you I didn't take that car. I didn't crash that car. I didn't see a baby in the back seat because that benefited him, just as much as it did when he lied about his own name.
>
> . . .
>
> So, you have a choice in this case. You can believe the three witnesses from the State . . . or you can accept the word of a man who's lied about his own name . . . .

                              II.

The jury found defendant guilty of first-degree carjacking, N.J.S.A. 2C:15-2a(1), but acquitted him of first-degree kidnapping, N.J.S.A. 2C:13-1b(1), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4A. The judge imposed a

9

twenty-year term subject to a period of parole ineligibility set by the No Early Release Act, N.J.S.A. 2C:43-7.2, and a five-year term of parole supervision upon release. This sentence was to run concurrent to a five-year term that defendant was then serving for a parole violation.

Defendant appealed, contending, among other challenges, that the assistant prosecutor's references to the false names for impeachment purposes violated N.J.R.E. 405(a) and 608. Defendant also contends that the assistant prosecutor's argument on summation was improper. Both of these actions by the State resulted in prejudice to him, thereby depriving him of a fair trial.

The Appellate Division affirmed the conviction and sentence, concluding that the use of false names did not imply that defendant belonged to a criminal class and, therefore, defendant was not prejudiced by the references. The panel rejected defendant's other arguments. We granted certification, State v. Parker, 209 N.J. 99 (2012), and the Attorney General's request to participate as amicus curiae.

III.

Defendant contends that the judge erred by permitting the assistant prosecutor to attack his credibility by cross-examining him on his past use of false names, and that those references deprived him of a fair trial. Specifically,

10

defendant argues that the assistant prosecutor's use of false name evidence was contrary to State v. Salaam, 225 N.J. Super. 66 (App. Div.), certif. denied, 111 N.J. 609 (1988), the principal New Jersey case concerning the introduction of evidence of false names used by a defendant in the past. Defendant argues that Salaam held that the past use of a false name by a defendant should be kept from the jury unless it is relevant for some purpose. Defendant also argues that the assistant prosecutor's introduction of defendant's false names in cross-examination violated N.J.R.E. 608, which provides that a witness cannot be impeached by specific instances of untruthfulness that were not the subject of a conviction.

The State argues that the judge properly allowed the assistant prosecutor to impeach defendant's credibility on cross-examination by referencing defendant's use of false names. The State also argues that defendant's reliance on N.J.R.E. 405 and 608 is misplaced because the assistant prosecutor did not refer to defendant's use of false names in an attempt to establish defendant's character for untruthfulness or to show a specific instance of bad conduct. Rather, the State argues that N.J.R.E. 607 provides that a witness' credibility is always relevant and may be impeached with extrinsic evidence.

The Attorney General of New Jersey as amicus curiae, argues that defendants put their credibility at issue when electing to

11

take the stand, therefore, N.J.R.E. 607 and 611 permits a prosecuting attorney to question a witness on matters related to the witness' own credibility. Specifically, the Attorney General argues that N.J.R.E. 405 and 608 have no bearing on the use of a witness' false names to impeach credibility. In other words, the Attorney General maintains that, "when impeachment is a prosecutor's sole purpose for confronting a defendant regarding his use of [false names] . . . then such cross-examination should be permitted to allow the jury to assess the defendant's credibility." The Attorney General notes that, because the assistant prosecutor never used the term "alias," referring instead to defendant's use of "another name," the assistant prosecutor did not imply defendant's "membership in the criminal class" and therefore did not run afoul of Salaam.

IV.

N.J.R.E. 607 provides generally that, "[e]xcept as otherwise provided by Rules 405 and 608, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence relevant to the issue of credibility[.]" In short, N.J.R.E. 607 permits the introduction of extrinsic evidence affecting a witness' credibility regardless of whether that evidence is relevant to any other issue in the case. See Green v. N.J. Mfrs. Ins. Co., 160 N.J.

12

480, 494-95 (1999).  There are exceptions to this general rule set forth in N.J.R.E. 405 and 608.  These exceptions restrict the types of extrinsic evidence that may be introduced in efforts to impeach a witness.

N.J.R.E. 405 provides, in relevant part:

> (a)  Reputation, opinion, or conviction of crime.  When evidence of character or a trait of character of a person is admissible, it may be proved by evidence of reputation, evidence in the form of opinion, or evidence of conviction of a crime which tends to prove the trait.  Specific instances of conduct not the subject of a conviction of a crime shall be inadmissible.
>
> [N.J.R.E. 405(a) (emphasis added).]

Thus, N.J.R.E. 405 generally provides that a witness' character trait, including truthfulness, cannot be proven by specific instances of conduct, unless that conduct was the subject of a prior conviction.  See State v. Spivey, 179 N.J. 229, 242-43 (2004) (upholding trial court's refusal to allow cross-examination by prosecuting attorney on prior mishandling of evidence); State v. Dreher, 302 N.J. Super. 408, 455-56 (App. Div.) (upholding trial court's refusal to allow cross-examination of State's witness regarding prior incident of credit card fraud for which witness was never convicted), certif. denied, 107 N.J. 647 (1997).

N.J.R.E. 608 governs permissible and prohibited methods of proving a witness' character for truthfulness or untruthfulness.

13

It restricts the permissible methods of proving a witness' character to those set forth in N.J.R.E. 405. N.J.R.E. 608 also expressly excludes specific instances of conduct that are not the subject of a conviction to prove a witness' character for truthfulness or untruthfulness. As stated in State v. Guenther, 181 N.J. 129, 140 (2004), "our rules permit evidence in the form of opinion, reputation, or a prior criminal conviction to attack a witness's credibility . . . . However, evidence of specific instances of conduct—other than a prior conviction—to prove the character trait of untruthfulness is prohibited." (internal citations omitted).

In a line of cases beginning with Salaam, supra, 225 N.J. Super. at 72-76, New Jersey courts specifically have considered cases that address when a judgment of conviction may be referred to and what information in such judgments may be used to impeach credibility. For instance, a judgment of conviction may be produced to prove the existence of a prior conviction. See State v. H.G.G., 202 N.J. Super. 267, 279 (App. Div. 1985). Other decisions cited by the State suggest that, in addition to using a judgment to establish the fact of a conviction, counsel may question a witness regarding all matters that would normally appear on the judgment. See e.g., State v. Garvin 44 N.J. 268, 280 (1965) (noting that courts have "authorize[d] proof by cross-examination of what the record of conviction discloses.")

14

However, more recent decisions have identified several elements contained in a judgment of conviction that cannot be disclosed to a jury in order to impeach a witness' credibility.  For example, in State v. Jenkins, 299 N.J. Super. 61, 73-75 (App. Div. 1997), the Appellate Division noted that a probation violation "does not constitute a criminal conviction" and thus "cannot be used for impeachment purposes [pursuant to] N.J.R.E. 609" even if recorded on a judgment of conviction.

Similarly, in State v. Burgos, 262 N.J. Super. 1, 5 (App. Div. 1992), the Appellate Division held that criminal charges that were dismissed as part of a plea agreement cannot be used to impeach a witness' credibility, despite their inclusion on a judgment of conviction, noting that "[t]he mere fact the dismissed criminal charges may appear on the judgment of conviction is irrelevant.  Only convictions of crimes may be used to affect credibility."  Ibid.

In Salaam, supra, the issue before the Appellate Division was whether the trial judge committed harmful error by revealing the defendant's false names to the jury.  225 N.J. Super. at 72. During the trial, the judge twice referred to defendant as "Abdul Haqq Salaam, also known as Willie Favors."  Ibid. Defendant objected, arguing that these references to his false name denied him a fair trial.  Ibid.

15

The Appellate Division disagreed, holding that "[t]hese references neither compromised defendant's right to have the jury evaluate the merits of his defense nor prejudiced his right to a fair trial." Id. at 76. The panel highlighted the fact that "the references to defendant's prior name were made sparingly—only three times—and did not suggest an element of criminal association or bad character on the part of defendant." Ibid. (emphasis added). The panel went on to explain, "it is well-settled that 'the fact of alias names should be kept from the jury unless relevant for some purpose[.]'" Id. at 72 (quoting State v. Stanhope, 676 P.2d 1146, 1151 (Ariz. Ct. App. 1984) (internal citations omitted)). The panel noted that the main objection to the use of a false name in a criminal prosecution is "that an alias implies that the defendant belongs to the criminal class and thereby prejudices the jury." Id. at 73 (quoting State v. Muniz, 622 P.2d 1037 (N.M. 1981) (internal citation omitted)). Thus, Salaam stands for the proposition that, in order for the admission of the reference to a false name to constitute grounds for reversal, "some tangible form of prejudice" to the defendant must be demonstrated. Ibid.

V.

At the outset of our analysis, we clarify what this case is and is not about. This case is not about permitting the State to impeach the credibility of a testifying defendant with a

16

judgment of conviction. This is expressly permitted by N.J.R.E. 609, subject to certain exceptions not relevant in this case. Here, the assistant prosecutor could have used judgments of defendant's prior convictions to impeach defendant's credibility without bringing to the jury's attention the use of false names. However, the assistant prosecutor did not follow that course. Rather, the impeaching information was not the existence of these prior convictions, but defendant's use of false names to police officers when arrested for those offenses for which he was later convicted.

This case is also not about arguing to the jury that defendant is part of a criminal class. This argument is improper. Salaam, supra, 225 N.J. Super. at 73. Although no such argument was made here, the assistant prosecutor argued that: defendant lied and used false names on two prior occasions because it benefited him to do so, and defendant was testifying falsely at trial for the same reasons, i.e., it would benefit him.

It is clear from the record that these specific instances of lying were not the subject of criminal convictions. For that reason, the introduction of false-name evidence was inadmissible and contrary to N.J.R.E. 405(a) and 608.

Both the State and defendant argued in summations that the outcome of this trial hinged almost entirely on witness

17

credibility. The critical difference between Salaam and this case is that here, the State used defendant's prior use of false names to impeach his credibility as a witness in a way that violates N.J.R.E. 405(a) and 608. In a close case, such as this one, the wrongful admission of such impeaching evidence had a capacity to affect the outcome of the trial.

We note that Salaam and the cases following it concerned whether the mere disclosure of a defendant's false names, regardless of whether the defendant testified, necessitated the reversal of the defendant's conviction. In Salaam, King, and Paduani, the references to the defendants' false names were brief and the State did not use the false names to make a substantive point or impeach the credibility of a witness. See State v. King, 372 N.J. Super. 227, 240-41 (App. Div. 2004), certif. denied, 185 N.J. 226 (2005); Salaam, supra, 225 N.J. Super. at 75-76; State v. Paduani, 307 N.J. Super. 134, 146-47 (App. Div.), certif. denied, 153 N.J. 216 (1998).

Here, defendant's false names were intentionally disclosed and the assistant prosecutor repeatedly referred to them to make the point that defendant's testimony was not to be believed. The use of false names for impeachment purposes introduces additional evidentiary issues that were simply not at stake in Salaam, King, and Paduani, and thus, we decline to rely on those cases when deciding this issue.

18

The better analytical framework is set forth in the <u>New Jersey Rules of Evidence</u> for dealing with the impeachment of witness testimony. As discussed in section IV of this opinion, the general principle is that extrinsic evidence may be introduced to impeach a witness' testimony, <u>N.J.R.E.</u> 607, but if the impeachment takes the form of an attack on a witness' character for truthfulness, the only permissible evidence to impeach credibility is of opinion or reputation, or evidence of a prior conviction. <u>N.J.R.E.</u> 608-609.

Evidence that defendant had previously lied about his name does not fit into any of these categories. In order to qualify as "evidence in the form of opinion or reputation," the State would have had to present the testimony of a third party who knew defendant. <u>See, e.g.</u>, <u>Fitzgerald v. Stanley Roberts, Inc.</u>, 186 <u>N.J.</u> 286, 309-10 (2006). That, of course, did not occur here.

Although <u>N.J.R.E.</u> 607, standing alone, seemingly permits the prosecuting attorney's use of defendant's false names in this case, <u>N.J.R.E.</u> 405(a) and 608 forbids such practice unless the use of a false name resulted in a conviction. Additionally, <u>N.J.R.E.</u> 607 is specifically limited by <u>N.J.R.E.</u> 405 or 608 ("Except otherwise provided by <u>Rules</u> 405 and 608 . . . ."). Despite the assertions by the State and amicus to the contrary, the assistant prosecutor clearly used defendant's use of a false

19

name for the purpose of establishing defendant's character trait for lack of veracity and argued that defendant was acting in conformity with that trait while testifying. After inducing defendant to admit that he had provided the police with a false name in connection with an earlier conviction, the assistant prosecutor repeatedly asked whether defendant had lied during earlier arrests "because it would benefit [him] in some way." When defendant conceded that that had been his motivation, the assistant prosecutor immediately turned to the testimony that defendant had offered on direct examination, asking several times whether it would "benefit [him] to lie" about the events of the night of the carjacking. The only purpose of that questioning was to persuade the jury that because defendant had lied in a particular situation in the past, it was reasonable to conclude that he was lying on the stand. And, in case the jurors were unable to make that connection on their own, the assistant prosecutor twice made it for them during summation, rhetorically asking whether they could trust the testimony of someone who was willing to "lie about his name."

Nor does the assistant prosecutor's use of defendant's false names qualify as evidence of a "witness' conviction of a crime" under N.J.R.E. 609. This Court has emphasized that it is only the conviction, not events that may have occurred ancillary to a conviction, that can be used for impeachment purposes. See

20

State v. Rowe, 57 N.J. 293, 302-03 (1970); Jenkins, supra, 299 N.J. Super. at 75; 1991 Supreme Court Committee Comment on N.J.R.E. 609 ("While [N.J.R.E. 609] draws no distinction between crimes of dishonesty or false statement and other crimes, it is clear that it applies only to indictable offenses which are the subject of valid convictions.").

Further, the State's argument that N.J.R.E. 609 permits a prosecuting attorney to introduce "everything within the four corners of the [judgment of conviction]" is not supported by our caselaw. Although it is true this Court had at an earlier time used sweeping language to that effect, see Garvin, supra, 44 N.J. at 280 (noting that courts have consistently "authorize[d] proof by cross-examination of what the record of conviction discloses"); State v. Costa, 11 N.J. 239, 250 (1953) ("[I]nterrogation to disclose conviction of a crime for the purpose of affecting credibility may embrace anything which is part of the record of conviction[.]"), our courts have recently adopted a more restrictive approach. Our courts have since established that certain information available through records generated in connection with a criminal prosecution should not be disclosed to a jury. See State v. Brunson, 132 N.J. 377, 391 (1993); Jenkins, supra, 299 N.J. Super. at 75; Burgos, supra, 262 N.J. Super. at 6; State v. Medina, 254 N.J. Super. 668, 678 (App. Div. 1992). Thus, the mere inclusion of information on a

21

judgment of conviction does not automatically entitle a prosecutor to use it for purposes of witness impeachment.

The assistant prosecutor made defendant's prior use of false names the centerpiece of his attack on defendant's credibility. An examination of the transcript of the assistant prosecutor's cross-examination of defendant reveals that a substantial portion of the cross-examination was devoted to establishing that defendant had previously lied about his name and suggesting that, because defendant had "lied for a benefit" when he gave a false name, he was likely lying for a benefit while on the stand.

The outcome of the trial depended on the jury's credibility assessments. We conclude that defendant's conviction must be reversed because the State's primary attack on defendant's credibility was based on use of improperly admitted character evidence and closing arguments premised on such evidence.

Finally, having determined that the judge's decision to allow the assistant prosecutor to question defendant regarding his use of false names was in error, we address whether that error was harmful. That is, whether the error is "clearly capable of producing an unjust result." R. 2:10-2.

The State presented essentially no physical evidence establishing that defendant was the individual who drove Robinson's car. Instead, the State relied on the testimony of

22

two witnesses -- Sharon and S.C. -- who testified that they saw defendant enter the car and drive away. Defendant testified and denied that he had gone near the car, claiming instead that he had simply participated in Robinson's beating. The State, on the other hand, impermissibly attacked defendant's credibility by improperly admitting character evidence. Indeed, the State's summation centered on this evidence.

We conclude that under these circumstances, the improper admission of evidence of prior use of aliases or false names had the clear capacity to produce an unjust result and requires a new trial.

VI.

Accordingly, the judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for a new trial.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and JUDGE CUFF (temporarily assigned) join in JUDGE RODRÍGUEZ's opinion.

SUPREME COURT OF NEW JERSEY

NO.   __A-67____                    SEPTEMBER TERM 2011

ON CERTIFICATION TO ____Appellate Division, Superior Court____



STATE OF NEW JERSEY,

       Plaintiff-Respondent,

              v.

JARRETT PARKER,

       Defendant-Appellant.



DECIDED _____January 15, 2014_____
_____Chief Justice Rabner_____ PRESIDING
OPINION BY _____Judge Rodríguez_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1