704 A.2d 582

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOSE PADUANI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 16, 1997—Decided January 15, 1998.

Before Judges LONG, STERN and KLEINER.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Alan I. Smith*, Designated Counsel, of counsel and on the brief).

*Ronald S. Fava*, Passaic County Prosecutor, attorney for respondent (*Michelle Katich*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

On February 2, 1995, defendant, Jose Paduani, and his brother, Richard Paduani, were charged with: aggravated assault against Jose Rodriguez, contrary to *N.J.S.A.* 2C:12–1b(2), a third-degree crime (count one); possession of a weapon for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4a, a second-degree crime (count two); aggravated assault against Victor Diaz, contrary to *N.J.S.A.* 2C:12–1b(2), a third-degree crime (count three); possession of a weapon for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4a, a second-degree crime (count four); and unlawful possession of a weapon, contrary to *N.J.S.A.* 2C:39–5b, a third-degree crime (count five).

In a joint trial, each defendant was found not guilty on both counts one and three charging aggravated assault; however, each defendant was found guilty on both counts one and three of the

lesser-included offense of pointing a firearm, in violation of *N.J.S.A.* 2C:12–1b(4), a fourth-degree crime. On counts two and four, each defendant was found not guilty of possession of a weapon for an unlawful purpose to use it unlawfully against the property of the alleged victims but found guilty of possession of a weapon with a purpose to use it unlawfully against the person of each victim. Each defendant was also acquitted on count five charging unlawful possession of a weapon.[1]

At sentencing, the trial judge merged defendant's pointing a firearm convictions into the convictions for possession of a weapon for an unlawful purpose and then sentenced defendant to a custodial term of ten years with a five-year period of parole ineligibility. The sentences on counts two and four were to be served concurrently with each other. Appropriate statutory penalties payable to the Violent Crimes Compensation Board were also imposed.

On appeal, defendant raises seven points of error:

*POINT I*

THE TRIAL COURT COMMITTED PLAIN ERROR AND COMPROMISED DEFENDANT'S RIGHT TO FULL APPELLATE REVIEW BY PRESIDING OVER A TRIAL WHICH DID NOT TRANSCRIBE SIDEBAR CONFERENCES (NOT RAISED BELOW)

(A)

OFF THE RECORD SIDEBAR CONFERENCES WHICH ARE NOT THE SUBJECT OF ANY SUBSEQUENT STATEMENT'S [sic] OR CLARIFICATIONS BY THE COURT.

(B)

OFF THE RECORD SIDEBAR DISCUSSIONS WHICH WERE FOLLOWED BY ATTEMPTED CLARIFICATIONS AND SUPPLEMENTAL STATEMENTS.

---

[1] Co-defendant Richard Paduani filed a separate appeal, A–5320–95T4. We have filed a separate opinion affirming his conviction and sentence.

## (C)

SINCE THE OMITTED PORTIONS OF THE RECORD, WHETHER SUPPLE-MENTED OR NOT, RELATE TO ISSUES RAISED ON APPEAL, THE COURT'S PROCEDURE DURING TRIAL NOT TO RECORD SIDEBAR CONFERENCES REQUIRES REVERSAL OF DEFENDANT'S CONVICTION AS PLAIN ERROR. (NOT RAISED BELOW)

*POINT II*

ADMISSION OF EVIDENCE OF DEFENDANT'S ALIAS WAS IMPROPER AND SO PREJUDICIALLY UNFAIR AS TO HAVE DEPRIVED DEFENDANT OF A FAIR TRIAL.

## (A)

EVIDENCE OF DEFENDANT'S ALIAS WAS NOT MATERIAL TO PROOF OF ANY OF THE CHARGED CRIMES.

## (B)

EVEN IF MATERIAL AND RELEVANT, THE PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY PREJUDICE AND DEFENDANT'S ALIAS SHOULD HAVE BEEN EXCLUDED PURSUANT TO *N.J.R.E.* 403.

*POINT III*

ADMISSION OF THE NOVEMBER 16, 1994 STATEMENT OF VICTOR DIAZ AND JOSE RODRIGUEZ AS PRIOR INCONSISTENT STATEMENTS WAS REVERSIBLE ERROR.

## (A)

THE COURT ERRED IN ADMITTING VICTOR DIAZ'S STATEMENT AS A PRIOR INCONSISTENT STATEMENT BECAUSE DIAZ'S TRIAL TESTIMONY WAS "INCONSISTENT" WITH THE STATEMENT.

## (B)

THE COURT ERRED IN ADMITTING THE STATEMENT OF JOSE RODRIGUEZ AS A PRIOR INCONSISTENT STATEMENT BECAUSE THE STATE FAILED TO ESTABLISH THE "RELIABILITY" OF THE STATEMENT BY A PREPONDERANCE OF THE EVIDENCE.

*POINT IV*

DEFENDANT'S ABILITY TO ENGENDER A REASONABLE DOUBT WAS UNDULY RESTRICTED BY THE TRIAL COURT. (NOT RAISED BELOW)

*POINT V*

THE COURT ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE.

*POINT VI*

THE PROSECUTOR'S SUMMATION SUBSTANTIALLY PREJUDICED DEFENDANT'S RIGHT TO HAVE THE JURY FAIRLY EVALUATE THE EVIDENCE. (RAISED IN PART BELOW)

### (A)

THE PROSECUTOR IMPROPERLY VOUCHED FOR THE CREDIBILITY OF THE POLICE. (RAISED BELOW)

### (B)

THE PROSECUTOR MISLED THE JURY IN URGING AN UNSUPPORTABLE CONSIDERATION OF THE PRIOR INCONSISTENT STATEMENTS ADMITTED DURING TRIAL. (NOT RAISED BELOW)

### (C)

THE PROSECUTOR IMPROPERLY INVITED THE JURY TO DECIDE DEFENDANT'S GUILT ON THE BASIS OF SOCIETAL DUTY. (NOT RAISED BELOW)

*POINT VII*

THE IMPOSITION OF A TEN (10) YEAR CUSTODIAL SENTENCE WITH FIVE (5) YEARS OF PAROLE INELIGIBILITY WAS MANIFESTLY EXCESSIVE AND AN ABUSE OF DISCRETION BY THE SENTENCING COURT.

### (A)

THE COURT FAILED TO ARTICULATE ANY REASON FOR IMPOSING A SENTENCE IN EXCESS OF THE PRESUMPTIVE SEVEN (7) YEAR TERM FOR CRIMES OF THE SECOND DEGREE.

### (B)

THE COURT FAILED TO ARTICULATE ANY REASON FOR IMPOSING A FIVE (5) YEAR PERIOD OF PAROLE INELIGIBILITY.

We have carefully reviewed the record in light of these contentions and conclude that our intervention is unwarranted. The arguments raised in Points II, III, IV, V, VI, and VII are without merit. *R.* 2:11–3(e)(2). As to those points, we add additional

comment. The balance of this opinion focuses on Point I of defendant's appeal.

I

On November 15, 1994, at approximately midnight, Victor Diaz and Jose Rodriguez were installing a car radio into a Volkswagen at 18th Street in Paterson when a yellow Cadillac stopped in the street and two men with black handguns in their hands exited the vehicle. One man fired approximately four shots toward the Volkswagen. The other man held his gun in the air and shouted, "That's not them." The men reentered the Cadillac and were driven away by a third individual.

On November 16, 1994, Diaz gave a statement at the detective bureau. He stated, "I saw two guys jump out of the yellow car. The driver stayed in the car. As we were looking I saw the guy I know as Marijuana with a gun and it was pointed at us...." Diaz identified a picture of defendant Jose Paduani as "Marijuana." When questioned as to the identity of the other gunman, he stated, "I know him as Trouble. He is Marijuana's brother."

On that same date, Rodriguez gave a statement in which he identified the gunmen as "Marijuana" and "Trouble," the names by which he knew defendant and co-defendant, Richard Paduani. Rodriguez also identified photographs of both assailants.

Subsequent to November 16, 1994, each victim recanted his prior statement and attempted to withdraw all criminal complaints lodged against each defendant. At trial, each victim testified as to the underlying incident, but each victim persisted in recanting the identification of each defendant as contained in their statements at the detective bureau on the morning of December 16, 1994. Additionally, Rodriguez disavowed giving any statement to detectives. The only other witnesses for the State were detectives who had interviewed either Diaz or Rodriguez. The trial judge conducted two *Rule* 104 evidentiary hearings and admitted the statements of both Rodriguez and Diaz as prior inconsistent statements.

It is abundantly clear that the primary issue at trial was the credibility of Rodriguez and Diaz, comparing their statements allegedly given on November 16, 1994, their recantations at trial as to the identification of each defendant, and the testimony of detectives who took the statements allegedly given by each victim on November 16th. The jury obviously rejected each victim's recantation as to their identification of the perpetrators as Richard and Jose Paduani.

## II

Defendant contends that by conducting twenty-nine sidebar conferences off the record, the trial judge committed plain error requiring reversal of defendant's conviction and a new trial. In analyzing the efficacy of this contention, we are guided by our decision in *State v. Green,* 129 *N.J.Super.* 157, 322 *A.*2d 495 (App.Div.1974). In *Green,* we considered, among other issues, whether the denial of a motion for sequestration was error. We noted the absence of a record as to the motion and under those circumstances were constrained to reverse. In reaching that conclusion we noted:

> This points up a potential hazard in conducting side bar discussions off the record. The transcript of this trial contains a record of 18 such conferences of unknown length. While we recognize the absolute necessity for side bar conferences if trials are to proceed without undue delay and to avoid the needless shuttling of juries between the courtroom and the jury room, great care must be exercised by the trial judge to assure preservation of a verbatim recording of the proceedings required by *R.* 1:2–2 and *R.* 2:5–3(a). The complete transcript is of crucial importance for a meaningful review to both the appellate court and to new counsel on appeal. All side bar conferences which pertain in any way to the trial or the conduct thereof must be "on the record" and a verbatim recording made.
>
> [*Id.* at 166, 322 *A.*2d 495 (citations omitted).]

Despite our admonition in *Green,* we did not conclude that every failure to comply with the cited rules constitutes a *per se* basis for reversal. *See R.* 2:10–2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result, but the

appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court.").

By analogy, our Supreme Court concluded in *State v. Perry*, 124 *N.J.* 128, 590 *A.*2d 624 (1991), that a "gap" in a trial record neither automatically results in a defective trial record nor automatically prejudices a defendant's chance for appellate review. The Court noted: "The three 'gaps,' when read in the context of the entire transcript and of those discussions immediately preceding each gap, all involved inconsequential administrative matters or were related simply to waiting for the jury to re-enter the courtroom and settle into the jury box." *Id.* at 170, 590 *A.*2d 624.

The Supreme Court of Hawaii recently decided in *State v. Bates*, 84 *Hawai'i* 211, 933 *P.*2d 48 (1997),[2] with an exhaustive review of federal and state precedent, including that of Hawaii, *id.* 933 *P.*2d at 55, that: "[W]here the transcripts of a defendant's trial are incomplete because they omit portions of the trial proceedings, such omissions do not mandate reversal unless the defendant can demonstrate specific prejudice." *Id.* 933 *P.*2d at 54.

*Bates* also added the following caveat: "[A] defendant has a duty to reconstruct, modify, or supplement the missing portions of the record, and a failure to make a reasonable attempt to do so precludes him or her from alleging reversible error." *Ibid.See also R.* 1:2–2, Pressler, *Current N.J. Court Rules*, comment 3 (Reconstruction of record); *see also, R.* 2:5–5(a) (Motion to Settle the Record).

We note that in *United States v. Sierra*, 981 *F.*2d 123 (3rd Cir.1992), *cert. denied*, 508 *U.S.* 967, 113 *S.Ct.* 2949, 124 *L.Ed.*2d 696 (1993), the Third Circuit concluded:

Our view that the failure to comply with the Court Reporter Act does not warrant reversal without a specific showing of prejudice is generally shared by other circuits.... [I]nasmuch as many of the trial rulings made at sidebar are reflected in the recorded transcript of the trial proceedings, the mere absence of the sidebar transcript does not signify prejudice.

---

[2] The Pacific Reporter spells the state name with an apostrophe: "Hawai'i."

[*Id.* at 125, 127.]

We recognize that where a defendant contends that error was made in an unrecorded sidebar conference, prejudice may result from our inability to review the alleged error. *Calhoun v. United States*, 384 *F.*2d 180, 184 (5th Cir.1967). However, that is not the case here.

It is undisputed that the record on appeal inexcusably contains twenty-nine unrecorded sidebar conferences. Six of those conferences pertained to administrative matters; twelve conferences were specifically explained to the jury with judicial clarification; eleven conferences were unexplained. In those instances where there was a sidebar pertaining to administrative matters or clarification by the judge following the sidebar, we are satisfied that the absence of a recorded sidebar does not interfere with our appellate review.

Defendant contends that in specific instances where a sidebar was unrecorded and there was no post-sidebar conference clarification, the trial judge made prejudicial rulings which cannot be properly reviewed by this court in the absence of a verbatim record of the sidebar colloquy. Yet, our independent review of the record discloses the opposite. In each of defendant's specific claims, we have reviewed the transcript, both immediately preceding and following the sidebar. We are readily able to discern each issue discussed and, from counsel's conduct following the sidebar, the purpose of the sidebar and the judicial ruling which prompted counsel's subsequent conduct or question. We need not review each of defendant's specific objections. Two objections are illustrative and explain our methodology in reviewing defendant's claim of plain error.

### A.

The Passaic County Indictment referred to defendant as "Jose Paduani A/K/A Marijuana." It is clear from the record that "Marijuana" was *not* an alias but simply a street name or nick-

name by which defendant was known in his neighborhood. At a pre-trial conference, the judge directed that defendant's nickname not be used by the prosecutor in his opening statement or in any reference to the indictment.

As noted in Part I, each victim gave a statement to the investigating detectives on November 16, 1994, indicating that the assailant who exited the yellow cadillac holding a gun was a person known to each of them as "Marijuana." Each victim identified defendant from police photographs as the person he knew as "Marijuana."

One sidebar conference to which defendant assigned prejudice is the following:

The Prosecutor: And you saw how many individuals?

Mr. Diaz: Two.

Q: Two. Okay. Did you recognize them?

A: Well, we went to the, I saw like another person, like, it was like, couldn't even see the other person wasn't on a light, that's when I said, I recognized like the face looked familiar and that's when I seen Marijuana, Marijuana is his name.

Q: Jose?

A: Jose, I did not know their names.

Defense Counsel: Judge, may we approach?

(Off the record discussion at side bar)

Q: So these two individuals that were outside the car, what did you notice about them?

A: Stocky build and like I think I said hair, hair was waving up and the gun—

Q: Gun, who had a gun?

A: I believe it was Marijuana, Jose Paduani.

Q: Jose Paduani had a gun?

A: Yes.

It is clear from this illustration that the purpose of the sidebar requested by defense counsel was to seek a clarification of the use of the name "Marijuana" by the witness, Diaz, or by the prosecutor, to identify defendant. We are able to conclude that although the judge prohibited the use of the name "Marijuana" in the State's opening statement, he ruled at sidebar that the name "Marijuana" could thereafter be used during the trial. While the reasons for the judge's decision would be helpful for appellate

review, we can discern no prejudice to defendant by its omission from the record. We also note that defense counsel did not object to the non-recordation of the sidebar conference.

### B.

The second objection references the State's direct examination of investigating police officer Al Camacho. Camacho had been asked to describe the victims during his initial contact with them at the crime scene shortly after midnight on the morning of November 16, 1994.

Q. And could you describe their—the way they acted and describe—what I mean by that is their demeanor.

A. Both of the complainants were shaken as though they had went through some type of traumatic incident.

Q. So they were—there was some type of emotional experience that you feel they had experienced, is that correct?

A. Yes, sir.

Q. Some type of trauma. And being in the business that you're in, you see quite a number of individuals—

Defense Counsel: Objection to what he normally sees.

Prosecutor: Judge, it's by way of foundation. It may be in reverse, but it's by way of foundation.

The Court: I'll allow it.

Q. And in your type of work, sir, you see people who have been traumatized, is that correct?

A. Yes, sir.

Defense Counsel: Judge, are we going to qualify this witness as an expert?

Prosecutor: That's not necessary.

The Court: Just a general background, Mr. Baldi (defense counsel).

Prosecutor: Judge, can I approach?

(Sidebar discussion held off the record)

Q. Did you speak to both of these individuals?

A. Yes, sir.

Q. And did you ask them what happened?

It is obvious that at sidebar the court ruled favorably for defendant, as the prosecutor immediately shifted his emphasis from the victims' demeanor to questions relative to the alleged criminal episode. Clearly, the defense was not prejudiced by the

unrecorded sidebar conference which itself was prompted by defendant's prior objection to the State's questions.

Upon our review of the entire record, we are able to conclude, as did the Delaware Supreme Court in *Jensen v. State*, 482 A.2d 105 (Del.1984), regarding the unclarified sidebar conferences here, either "(a) that no change occurred in the line of questioning following the sidebar; (b) that the record is sufficient to indicate the substance of the sidebar, or (c) that the record discloses no showing of prejudice sufficient to require reversal as a matter of law." *Id.* at 119.

We also note that in one of defendant's examples of error, the unrecorded sidebar conference arose in the context of the State's use of a prior inconsistent statement of one victim. Although the judge's ruling at sidebar is omitted from the record, the exact ruling is readily available for review in the transcript of the *Rule* 104 evidentiary hearing, in which the trial judge fully explained his ruling, correctly relying upon *State v. Gross*, 216 *N.J.Super.* 98, 523 A.2d 215 (App.Div.), *certif. denied*, 108 *N.J.* 194, 528 A.2d 19 (1987), *and aff'd*, 121 *N.J.* 1, 577 A.2d 806 (1990), admitting the prior inconsistent statement. *See N.J.R.E.* 803(a)(1).[3] Thus, we are able to conclude that the unrecorded ruling at sidebar was consistent with the judge's prior recorded rulings on the same issue.

### III

In Point II, defendant contends that the use of his street name "Marijuana" during trial was improper. The use of defendant's street nickname during trial cannot serve as a *per se* predicate for reversal. The State argues that the admission of defendant's nickname was proper because it was relevant to the State's case, and that the court's limiting instruction to the jury

---

[3] In view of this observation, we need not offer any additional comment on defendant's Point III.

regarding the use of such testimony prevented any prejudice to the defendant. We agree.

As we have noted, this case did not involve the use of an alias as in *State v. Salaam*, 225 *N.J.Super.* 66, 541 *A.*2d 1075 (App.Div. 1988), where the trial judge twice referred to the defendant as "Abdul Haqq Salaam, also known as Willie Favors." *Id.* at 72, 541 *A.*2d 1075. In *Salaam*, the defendant specifically raised as a point of error that "[he] was denied a fair trial by the use of an alias in the indictment and by the trial court's repeated reference to defendant's alias when addressing the jury." Unlike *Salaam*, defendant here did not have an alias; he simply had a nickname by which he was known to the victims.

■ Still, although a nickname is not an alias, we think that the principle enunciated in *Salaam* that "the fact of alias names should be kept from the jury unless relevant for some purpose," *id.* at 72, 541 *A.*2d 1075 (citations omitted), is persuasive in instances where a defendant has a pejorative nickname, such as "Marijuana" or "Trouble." As noted in *Salaam:* "The principle [sic] objection to the use of an alias in a criminal proceeding is that an alias implies that the defendant belongs to the criminal class and thereby prejudices the jury." *Id.* at 73, 541 *A.*2d 1075 (citations omitted). "However, the majority of decisions involving this issue hold that the admission of irrelevant aliases into evidence will not afford a basis for reversal unless some tangible form of prejudice is demonstrated, *i.e.*, where such names have been intentionally offered as indicia of guilt." *Ibid.* (citation omitted). That was not the case here. The testimony was clearly relevant because each defendant was identified to the police by use of a nickname. In fact, defense counsel during trial referenced defendant by use of his nickname. Moreover, defendant has pointed to no tangible form of prejudice attributable to the use of his nickname during trial and our independent review of the record reveals none.

## IV

Defendant contends that the trial judge erred in imposing a manifestly excessive sentence and that he failed to articulate why the aggravating factors presented resulted in a sentence in excess of the presumptive term and in the imposition of the maximum period of parole ineligibility. We disagree.

Appellate review of a sentence is restricted to whether the determination of the sentencing factors was appropriate, whether the determination was supported by competent evidence in the record, and whether the sentence is so unreasonable that it shocks the judicial conscience. *State v. O'Donnell,* 117 *N.J.* 210, 215–16, 564 *A.*2d 1202 (1989); *State v. Roth,* 95 *N.J.* 334, 364–65, 471 *A.*2d 370 (1984); *State v. Bull,* 268 *N.J.Super.* 504, 508–09, 634 *A.*2d 101 (App.Div.1993), *certif. denied,* 135 *N.J.* 304, 639 *A.*2d 303 (1994). "An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." *O'Donnell, supra,* 117 *N.J.* at 215, 564 *A.*2d 1202; *State v. Jarbath,* 114 *N.J.* 394, 400–01, 555 *A.*2d 559 (1989); *Roth, supra,* 95 *N.J.* at 364–65, 471 *A.*2d 370.

In sentencing the defendant, the trial court listed as aggravating factors the risk that defendant will commit another offense, defendant's prior criminal record, and the need to deter defendant and others from violating the law. *N.J.S.A.* 2C:44–1a(3); *N.J.S.A.* 2C:44–1a(6); *N.J.S.A.* 2C:44–1a(9). The court found as a mitigating factor that the imprisonment of defendant would entail excessive hardship to himself or his dependents. *N.J.S.A.* 2C:44–1b(11). The Court's comments with regards to these findings are presented below.

The Court finds as aggravating factors number three, the risk that this defendant will commit another offense, as evidenced by his six prior convictions, this conviction which—I mean, this offense which occurred notwithstanding gainful employment that he was engaged in, his prior record as it relates to resisting arrest which sort of demonstrates a disregard of authority, prior weapons charge

which again is similar in nature to what occurred here, the possession of a handgun for an unlawful purpose.

So I feel that there is a risk that this defendant will commit another offense. I also find number six, the extent of his prior record and the seriousness of the offenses for which he's been convicted as previously noted.

Number nine, the need to deter this defendant and others from violating the law. So I find as aggravating factors number three, six, and nine.

I do find as number—as mitigating factor number 11, that the imprisonment of the defendant would entail a hardship on his dependents. He has two dependents. There is a court order for support. He has complied with the support order and as a matter of fact is paid in advance.

However, in weighing the mitigating and the aggravating factors, I find that the aggravating factors clearly and substantially outweigh the mitigating factor.

The court made some additional comments regarding the need to deter and the seriousness of the crime.

Mr. Paduani, I had begun to make some comments last week regarding the imposition of sentence here, particularly in light of the nature of the offenses for which you're—you were convicted here involved a shooting on the public streets of Paterson, a residential neighborhood.

I indicated to you how that kind of conduct certainly impacts on the entire community. It affects business attitudes, perhaps whether or not they want to come into a community and establish a business, where whether other individuals want to live in that community because of the safety factors or the criminality, level of criminality that's impacted.

So that this act had an impact over and above what it may have had on the victims of this particular incident.

I do recall that one of the victims, Mr. Rodriguez, came in and still was trying to make an effort to sort of absolve you of any responsibility, apparently did not consider this a very big deal.

But the Court does, the State does consider it a big deal because any innocent person sitting in the living room watching T.V. could have been a victim of this bullet that you fired or these bullets that you fired in a random and just indiscriminate manner without any consideration for anybody that may have been on the street or anyone else who was out on the street at that particular time.

So it's not something that's just between you and Mr. Rodriguez and the other victim of this alleged incident.

As for the minimum term without parole, the Court articulated the reasoning behind the term imposed in the following comments:

The Court in such a hearing as this is allowed to consider the testimony that was introduced at trial, anything that may appear in the presentence investigation, and any other information that might be relevant on that particular issue. While the Court will not address the question of operability in this issue—in this instance,

Mr. Chidiac,[4] because I think the, as the Court recalls the testimony and what was produced here, I think it's clear that this particular weapon was operable.

There was testimony from the both or one or both of the recanting witnesses that they observed what to be appeared to be a handgun in the hand of Jose Paduani that it was pointed in their direction. That they heard gunshots or that immediately they dug down and felt and heard something striking the car. And I believe the testimony said there were three items that struck the car. The Court can infer from the immediacy of the objects striking the car from the time that they first observed this defendant and the other co-defendant pointing the gun in their direction that these were bullets.

Now while you may be correct that the police testimony or procedure in not producing pictures of the bullet holes should there have been any, may not have been sufficient, nevertheless, I'm only required by a preponderance of the evidence to find that there was a firearm, and based on the credible testimony of the witnesses at the trial, I find that there was a firearm involved and that your client is subject to the Graves Act provisions.

Based upon our standard of review, we can find no error in the judge's decision to impose a sentence exceeding the presumptive term, or in his decision to impose the maximum period of parole ineligibility.

Affirmed.

---

[4] Norman J. Chidiac, defendant's counsel.