NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5382-14T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

QUAMEIR T. WATERS, a/k/a
COO COO, QUAMEIER WATERS,

 Defendant-Appellant.

 Submitted September 12, 2017 - Decided September 21, 2017

 Before Judges Carroll and Mawla.

 On appeal from the Superior Court of New
 Jersey, Law Division, Cumberland County,
 Indictment No. 13-07-0595.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Marcia Blum, Assistant Deputy
 Public Defender, of counsel and on the brief).

 Jennifer Webb-McRae, Cumberland County
 Prosecutor, attorney for respondent (Kim L.
 Barfield, Assistant Prosecutor, of counsel and
 on the brief).

PER CURIAM

 On November 13, 2012, defendant Quameir Waters, Octavis

Spence, and others attended a gathering hosted by Anthony and
Thomas Nieves at the Nieves's apartment in Fairton. The following

morning, defendant and Spence were involved in a heated argument,

during which Spence locked defendant outside the apartment, but

eventually let him back in. Defendant then fired two shots at

Spence, hitting him once in the back and leaving him paralyzed

from the waist down. Defendant left the scene, and the gun was

never recovered.

 Spence knew defendant for "[a] couple months" before the

shooting and referred to him by his street name, "Cuckoo." Spence

identified defendant as his assailant and described the gun

defendant used as a dark semiautomatic handgun. At the scene,

police found one bullet lodged in a wall and two empty shell

casings, which they concluded were fired from a semiautomatic

weapon.

 That evening, defendant was arrested at his Bridgeton home

by the Fugitive Unit of the New Jersey State Police (NJSP).

Defendant gave a statement in which he initially denied being at

the Fairton apartment on the morning of the shooting, insisting

he had gone fishing. He later admitted he was present; that he

and Spence had argued violently over a girl; and that he wanted

to fight Spence. However, defendant continued to deny shooting

Spence, and claimed "[s]ome other guy" came into the home and shot

 2 A-5382-14T1
Spence during the argument, but he could not provide police with

a name or description of the shooter.

 The police searched defendant incident to his arrest and

recovered one Metro PCS Kyocera cell phone and a blue AT&T cell

phone. After obtaining a Communications Data Search Warrant, the

police downloaded the contents of the phones onto a flash drive.

From the AT&T cell phone, they recovered a text message sent to a

contact named "Marianna" at 1:01 p.m. on November 14, 2012,

stating: "I got into some deep shit, bae. I need to know if you're

going to be here for me or not. This shit crazy. Write down this

address; 54 West Broad Street, Bridgeton, New Jersey 08302." The

address referred to in the text message is that of the Cumberland

County Jail.

 Police also recovered approximately 2000 photographs from the

cell phones, 200 of which had been deleted. Several deleted photos

were admitted in evidence at trial, including a picture of a black,

semiautomatic handgun with a magazine lying next to it, and a

picture of defendant holding what appeared to be a black handgun

and pointing it at the camera. The police could not determine the

caliber of the gun displayed in the photographs or the location

where the photos were taken.

 On July 17, 2013, defendant was charged in Cumberland County

Indictment No. 13-07-0595 with first-degree attempted murder,

 3 A-5382-14T1
N.J.S.A. 2C:11-3a(1) (count one); second-degree aggravated

assault, N.J.S.A. 2C:12-1b(1) (count two); fourth-degree

aggravated assault, N.J.S.A. 2C:12-1b(4) (count three); third-

degree aggravated assault, N.J.S.A. 2C:12-1b(4) (count four);

second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b

(count five); second-degree possession of a weapon for an unlawful

purpose, N.J.S.A. 2C:39-4a (count six); and second-degree

possession of a weapon by a convicted person, N.J.S.A. 2C:39-7b

(count seven). Following a January 2015 jury trial, defendant was

convicted on all seven counts.

 On April 22, 2015, the trial court denied defendant's motion

for a new trial, and granted the State's motion for a discretionary

extended term sentence. On count one, the court imposed a fifty-

year prison term with an eighty-five percent parole ineligibility

period pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-

7.2(a). The court merged counts two through six into count one.

On count seven, the court imposed an eight-year prison term with

five years of parole ineligibility, consecutive to the sentence

imposed on count one. The court also assessed the appropriate

fines and penalties, and awarded defendant 890 days of jail credit

for time already served.

 In this appeal, defendant challenges his convictions and

sentence. He presents the following arguments for our

 4 A-5382-14T1
consideration:

 POINT I

 THE PROSECUTOR COMMITTED REVERSIBLE
 MISCONDUCT WHEN HE MADE TWO ARGUMENTS IN
 SUMMATION THAT HAD NO BASIS IN FACT. (PARTLY
 RAISED BELOW).

 POINT II

 BECAUSE THERE WAS NO BASIS FOR ANY INSTRUCTION
 ON CONSCIOUSNESS OF GUILT, IT WAS PREJUDICIAL
 ERROR FOR THE COURT TO CHARGE THE JURY THAT
 THERE WERE TWO REASONS IT COULD DRAW THE
 INFERENCE: 1) FROM CELL PHONE PHOTOGRAPHS THAT
 WERE DELETED BEFORE THE SPONTANEOUS OFFENSE
 AND 2) FROM [DEFENDANT]'S "FLIGHT," WHICH
 CONSISTED OF HIS GOING HOME.

 POINT III

 THE PROSECUTOR'S REPEATED USE OF DEFENDANT'S
 PEJORATIVE STREET NAME WAS HIGHLY PREJUDICIAL
 AND VIOLATED HIS CONSTITUTIONAL RIGHTS TO DUE
 PROCESS AND TO A FAIR TRIAL. (NOT RAISED
 BELOW).

 POINT IV

 THE SENTENCE OF [FIFTY-EIGHT] YEARS, [FORTY-
 SEVEN AND ONE-HALF] YEARS WITHOUT PAROLE[,]
 IS BASED ON AN IMPROPER AGGRAVATING FACTOR,
 OVERLOOKS A RELEVANT MITIGATING FACTOR, AND
 IS EXCESSIVE.

We address each of these arguments in turn.

 I.

 Defendant contends the prosecutor committed reversible

misconduct when he made two arguments in summation that had no

basis in fact. First, defendant asserts the prosecutor misstated

 5 A-5382-14T1
facts in his summation when he argued that it was unknown whether

defendant deleted the photos from his cell phone before or after

the shooting. The prosecutor stated, in pertinent part:

 We have photographs on his phone.

 And I know it was probably kind of boring,
 hearing Detective Cavagnaro talk about the
 process and procedure [of recovering the
 photos] and going through the dates and times.
 And, yeah, there's a question; did he erase
 the pictures before or after he committed the
 crime?

 Well, the answer to -- whatever that answer
 is, it's not good for [defendant] because if
 he did it after the crime, he's trying to cover
 it up. If he did it before [the crime], it
 kind of says he knew it was coming.

 At trial, Cumberland County Prosecutor's Office Detective

Raymond Cavagnaro testified that the photos of the gun found on

defendant's phone had been deleted at 12:00 a.m. on November 14,

2012, "plus or minus five hours." The testimony of Spence and

NJSP Detective Arthur Barilotti was that the shooting occurred

sometime between 7:30 a.m. and 8:30 a.m. on November 14, 2012.

Thus, according to the State's evidence, the photos were erased

before the shooting.

 Defense counsel timely objected to the prosecutor's comment

on this evidence, arguing that the photos were "off [defendant's]

phone" by the time of the shooting, and accordingly, they "didn't

have anything to do with this shooting." Defense counsel argued

 6 A-5382-14T1
that this misstatement of fact was improper and constituted grounds

for a mistrial. The court disagreed, ruling that the prosecutor's

remark was a fair comment on the consciousness of defendant's

guilt. On appeal, defendant renews his argument that the

prosecutor's remarks cannot "be considered fair comment on the

evidence." He contends the State's evidence indicated that the

pictures were deleted before the shooting, and because the argument

between Spence and defendant was "wholly spontaneous," the

shooting could not have been planned.

 Second, defendant contends that the prosecutor committed

reversible misconduct when he remarked that it took "courage" for

Spence to testify at trial. During summation, the prosecutor

commented:

 [Defendant] tried to kill him and ended
 up paralyzing him, putting him in a wheelchair
 for the rest of his life. So not only has he
 got that wheelchair and everything that’s
 associated with it but he gets four years in
 prison.[1]

 What courage did it take to come in here?
 He could have been like Anthony Nieves. Taken
 the stand, looked over at [defendant], gotten
 a little shaky.

 Mr. Spence got up here and I ask you,
 when you evaluate his credibility, look at the

[1]
 At the time of trial, Spence was serving a four-year state
prison sentence for a violation of probation and a controlled
dangerous substances conviction.

 7 A-5382-14T1
 courage and ask yourself what courage that
 takes. And while you're at it, ask a very
 basic, fundamental question.

 Why in the world would Mr. Spence, who
 is in a wheelchair for the rest of his life,
 paralyzed from the waist down, get on this
 stand and [willfully] misidentify the person
 who put him in that wheelchair? That, ladies
 and gentlemen, makes zero sense, no sense.

 You want to look at credibility? You
 want to evaluate credibility? Look at the
 motives of the person taking the stand and ask
 yourselves, does this make sense?

 Although defendant did not object at trial, he now argues

that the prosecutor "implied damaging facts" by stating that Spence

had "courage" for testifying in court. He contends the jurors

"may well have understood that the prosecutor was insinuating that

it took courage for Spence to testify because he had reason to

fear . . . [defendant] would retaliate[.]" Defendant asserts that

the prosecutor's statement improperly communicated to the jury

that if Spence was willing to offer testimony under such

circumstances, then it must be true, and thereby "violated the

longstanding rule" that the prosecutor should not vouch for the

credibility of the victim.

 When "a claim [is made] of prosecutorial misconduct with

respect to remarks in summation, the issue presented is one of

law" and, thus, reviewed de novo. State v. Smith, 212 N.J. 365,

387 (2012), cert. denied, 568 U.S. 1217, 133 S. Ct. 1504, 185 L.

 8 A-5382-14T1
Ed. 2d 558 (2013). The issue raised in claims of prosecutorial

misconduct "is two-fold: whether the prosecutor committed

misconduct, and, if so, 'whether the prosecutor's conduct

constitutes grounds for a new trial.'" State v. Wakefield, 190

N.J. 397, 446 (2007) (quoting State v. Smith, 167 N.J. 158, 181

(2001)), cert. denied, 552 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed.

2d 817 (2008).

 "[P]rosecutors are afforded considerable leeway" when they

address the jury, provided "their comments are reasonably related

to the scope of the evidence." State v. Cole, ___ N.J. ___, ____

(2017) (slip op. at 32) (quoting State v. Frost, 158 N.J. 76, 82

(1999)). "Prosecutors should not make inaccurate legal or factual

assertions during a trial. They are duty-bound to confine their

comments to facts revealed during the trial and reasonable

inferences to be drawn from that evidence." Frost, supra, 158

N.J. at 85 (citation omitted). In addition, a prosecutor may not

express a personal belief or opinion as to the truthfulness of a

witness's testimony. State v. Marshall, 123 N.J. 1, 156 (1991),

cert. denied, 507 U.S. 929, 113 S. Ct. 1306, 122 L. Ed. 2d 694

(1993); State v. Staples, 263 N.J. Super. 602, 605 (App. Div.

1993).

 A prosecutor is, however, "entitled to argue the merits of

the State's case 'graphically and forcefully,' and is not required

 9 A-5382-14T1
to present those arguments as if he were addressing a lecture

hall[.]" Smith, supra, 212 N.J. at 403 (quoting State v. Feaster,

156 N.J. 1, 58 (1998), cert. denied, 532 U.S. 932, 121 S. Ct.

1380, 149 L. Ed. 2d 306 (2001)). They "may strike hard blows

[but] not . . . foul ones[.]" Feaster, supra, 156 N.J. at 59

(quoting Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629,

633, 79 L. Ed. 2d 1314, 1321 (1935)).

 "Notwithstanding the high standard to which a prosecutor is

held as he or she gives an opening statement or summation, 'not

every deviation from the legal prescriptions governing

prosecutorial conduct' requires reversal." State v. Jackson, 211

N.J. 394, 408-09 (2012) (quoting State v. Williams, 113 N.J. 393,

452 (1988)). A prosecutor's improper "comments are deemed to have

violated the defendant's right to a fair trial when they 'so

infect[] the trial with unfairness as to make the resulting

conviction a denial of due process.'" Id. at 409 (alteration in

original) (quoting State v. Koedatich, 112 N.J. 225, 338 (1988),

cert. denied, 488 U.S. 1017, 109 S. Ct. 813, 102 L. Ed. 2d 803

(1989)).

 In our review of the prosecutor's comments, the factors to

be considered include: "whether 'timely and proper objections'

were raised; whether the offending remarks 'were withdrawn

promptly'; . . . whether the trial court struck the remarks and

 10 A-5382-14T1
provided appropriate instructions to the jury [; and] . . . whether

the offending remarks were prompted by comments in the summation

of defense counsel." Smith, supra, 212 N.J. at 403-04 (citations

omitted). Where there is no objection to the prosecutor's

statements at trial, defendant cannot prevail without showing

plain error — error clearly capable of prejudicing defendant's

right to a fair trial. State v. Timmendequas, 161 N.J. 515, 576-

77 (1999), cert. denied, 534 U.S. 858, 122 S. Ct. 136, 151 L. Ed.

2d 89 (2001). A failure to object is relevant to the fair trial

standard in two ways. It "indicates that defense counsel did not

believe the remarks were prejudicial at the time[,]" and it

"deprives the court of the opportunity" to address and cure the

error injected by the prosecutor's deviation from his or her duty

"'to ensure that justice is achieved,'" which exists whether or

not defense counsel objects. Id. at 576 (quoting State v. Long,

119 N.J. 439, 483 (1990)).

 Here, the fact the prosecutor's summation misstated the

photographs may have been erased after the shooting is not a

sufficient basis to reverse defendant's convictions. First, as a

curative measure, the court reminded the jury that "[a]rguments,

statements, remarks, openings and summations of counsel are not

evidence and must not be treated as evidence." Second, defendant's

contention that the altercation that ultimately resulted in

 11 A-5382-14T1
Spence's shooting was purely "spontaneous" rather than "planned"

was clearly an issue for the jury to decide. Importantly, Spence

testified that the argument persisted for twenty to thirty minutes.

After the argument, Spence locked the door, but eventually let

defendant back in the apartment, at which time the shooting

occurred. Moreover, a plethora of additional evidence, including

the identification of defendant by Spence, who knew him well;

defendant's incriminating text message to Marianna after the

shooting indicating he "got into some deep shit" and providing her

with the address for the county jail; and his inconsistent

statements to police following his arrest, amply supported

defendant's conviction and rendered admission of the challenged

remark harmless.

 With respect to the prosecutor's comments regarding Spence's

"courage" in testifying, we begin by noting that defense counsel

did not object at trial, and hence our analysis of these comments

is governed by the plain error standard. R. 2:10-2. We conclude

these comments did not rise to the level of vouching, nor did the

State's comments mislead the jury or improperly bolster Spence's

testimony. As the State correctly submits, courage and honesty

are not synonymous.

 We distinguish the present case from State v. Walden, 370

N.J. Super. 549 (App. Div.), certif. denied, 182 N.J. 148 (2004),

 12 A-5382-14T1
where we determined that the prosecutor's summation impermissibly

commented on the credibility of a witness, Temil Green, so as to

mandate a reversal. In Walden, the prosecutor stated:

 If a reasonable person were going to go to a
 store and buy a witness, I would suggest to
 you that reasonable person would buy Temil
 Green. That he was just a good, solid, decent,
 courageous, I suggest to you, honest kid. He
 is the type of kid that we hope our sons will
 grow up to be. Not having everything handed
 to him on a silver platter or on a silver
 spoon but when it comes down to your gut to
 do the right thing, to be honest, to be
 truthful, to not cave into the pressures, to
 not succumb to any of the fears, that's
 courage, ladies and gentlemen.

 That is a lot more courage than many of us
 will ever know and I suggest to you that when
 you determine the credibility of Temil Green,
 [] I'm going to suggest to you that Temil Green
 was as honest as could be when he gave that
 statement and was as courageous as could be
 and I will grant you he was uncomfortable and
 nervous there and I will talk about -- suggest
 to you why that’s so."

 [Id. at 560 (emphasis added).]

 In Walden, the prosecutor directly stated to the jury his

personal opinion that the witness was honest, contending that

Temil Green was "as honest as he could be" and that he "gave you

honest testimony." Ibid. Importantly, in analyzing this

statement, we took issue with the prosecutor's suggestion that

Green was honest and to be believed, and not with his suggestion

that Green was courageous. Id. at 560-62. In contrast, in the

 13 A-5382-14T1
present case, the prosecutor merely stated that Spence was

courageous for testifying, given the debilitating injuries he

suffered in the shooting. When viewed in context, we find no

plain error in these challenged remarks.

 II.

 Defendant next contends there was no basis for the trial

court to instruct the jury on consciousness of guilt, either as

to the deleted photographs or defendant's alleged flight from the

shooting scene. Defendant's arguments on this point are

unpersuasive.

 At the charge conference, defense counsel objected to the

flight charge, arguing there was no factual basis in the record

to support it, and citing the prejudicial effect of such charge.

In rejecting defendant's argument, the trial judge reasoned:

 [T]here's certainly an inference that can
 be drawn by the jury that [defendant] fled
 shortly after the alleged commission of the
 crime. So if [defendant] did it, [he is] the
 one that left. There's certainly evidence
 before the jury of that . . . but the charge
 also is very specific.

 It says that mere departure from a place
 where a crime has been committed does not
 constitute flight. The charge goes on to say
 that if you find that the [d]efendant, fearing
 that an accusation or arrest would be made
 against him on the charge involved in the
 Indictment [] [t]ook refuge in flight for the
 purpose of evading the accusation or arrest
 on that charge, then you may consider such

 14 A-5382-14T1
 flight, in connection with all the other
 evidence in the case, as an indication of
 proof of consciousness of guilt.

 Flight may be considered as evidence of
 consciousness of guilt if you should determine
 that the [d]efendant's purpose in leaving was
 to evade accusation or arrest to the offense
 charged in the Indictment.

 So . . . there's an adequate basis in the
 record for the jury to consider that. It's
 not a separate crime. It's just whether or
 not there's consciousness of guilt.

 [Defendant] didn't stick around. [He]
 wasn't found at the scene. I think that it's
 an inference that can be drawn. I'm satisfied
 that there's [a] sufficient amount of evidence
 before the jury to give that charge.

The judge subsequently instructed the jury consistent with Model

Jury Charge (Criminal), "Flight" (May 10, 2010).

 Pertinent to the deleted photographs, the judge instructed

the jury as follows:

 [I]n this case, the evidence that has
 been offered to attempt to convince you that,
 in fact, the photos were deleted near the time
 of the events alleged, is evidence of a
 consciousness of guilt on the [d]efendant's
 part, regarding the Attempted Murder and/or
 Aggravated Assault, as alleged.

 You may not draw this inference, unless
 you conclude that the acts alleged were an
 attempt by the [d]efendant to cover up the
 crimes being alleged. Whether this evidence
 does, in fact, demonstrate consciousness of
 guilt is for you to decide.

 15 A-5382-14T1
 You may decide that the evidence does not
 demonstrate consciousness of guilt and it is
 not helpful to you at all. In that case, you
 must disregard the evidence.

 On the other hand, you may decide that
 the evidence does not demonstrate
 consciousness of guilt and use it for that
 specific purpose. However, you may not use
 this evidence to decide that the [d]efendant
 has a tendency to commit crimes or that he's
 a bad person.

 That is, you may not decide that just
 because photographs were found on the
 [d]efendant's phone, he must be guilty of the
 present crimes. I've admitted the evidence
 only to help you decide whether such evidence
 is evidence of consciousness of guilt.

 You may not consider it for any other
 purpose and may not find the [d]efendant
 guilty now, simply because the State has
 offered this specific evidence.

 "An essential ingredient of a fair trial is that a jury

receive adequate and understandable instructions. Correct jury

instructions are at the heart of the proper execution of the jury

function in a criminal trial." State v. Afanador, 151 N.J. 41,

54 (1997) (citations omitted). It is essential to the right to a

fair trial that jury charges be accurate and appropriate,

particularly in criminal cases. State v. Green, 86 N.J. 281, 289

(1981). Our courts "have always placed an extraordinarily high

value on the importance of appropriate and proper jury charges to

the right to trial by jury. Erroneous instructions on matters or

 16 A-5382-14T1
issues material to the jurors' deliberations are presumed to be

reversible error." State v. Grunow, 102 N.J. 133, 148 (1986)

(citing State v. Collier, 90 N.J. 117, 122-23 (1982)). That is,

erroneous instructions are viewed as "'poor candidates for

rehabilitation under the harmless error philosophy.'" State v.

Belliard, 415 N.J. Super. 51, 70 (App. Div. 2010) (quoting Feaster,

supra, 156 N.J. at 45), certif. denied, 205 N.J. 81 (2011).

 Our Supreme Court has recently noted that "[o]ur

jurisprudence regarding consciousness-of-guilt evidence derives

from the principle that certain conduct may be 'intrinsically

indicative of a consciousness of guilt,' and may therefore be

admitted as substantive proof of the defendant's guilt." Cole,

supra, ___ N.J. at ___ (slip op. at 34) (quoting State v. Phillips,

166 N.J. Super. 153, 160 (App. Div. 1979), certif. denied, 85 N.J.

93 (1980)). "Evidence of flight . . . by an accused generally is

admissible as demonstrating consciousness of guilt, and is

therefore regarded as probative of guilt." State v. Mann, 132

N.J. 410, 418 (1993); see also Cole, supra, ___ N.J. at ___ (slip

op. at 34). "The most common example of conduct that can give

rise to an inference of consciousness of guilt is flight." State

v. Randolph, 441 N.J. Super. 533, 562 (App. Div. 2015), aff'd in

part and rev'd in part on other grounds, 228 N.J. 566 (2017).

Evidence of flight need not be unequivocal, but it "must be

 17 A-5382-14T1
'intrinsically indicative of a consciousness of guilt.'"

Randolph, supra, 228 N.J. at 595 (quoting Randolph, supra, 441

N.J. Super. at 562).

 In the present case, we are satisfied that the trial judge

properly exercised his authority in administering the flight

charge. Defendant's reason for promptly leaving the shooting

scene was unexplained. It was not until later that evening that

he was located and apprehended by the fugitive squad. In the

interim, he texted a friend, indicating he was in "deep shit," and

provided her with the address for the county jail. The jury was

entitled to evaluate that evidence and determine defendant's

actual motivation for fleeing. The judge did not abuse his

discretion in providing the flight charge.

 We reach the same conclusion with respect to the deleted

photographs. As noted, the State's evidence indicated that the

photos in question were deleted before the shooting occurred.

Nonetheless, defendant's deletion of the photos arguably evidenced

consciousness of guilt, since a jury could rationally infer

defendant knew he illegally possessed a firearm that he intended

to use against another. Accordingly, the judge did not abuse his

discretion in issuing a consciousness-of-guilt instruction.

 18 A-5382-14T1
 III.

 Defendant next argues that the prosecutor's repeated

reference to his street name, Cuckoo, was highly prejudicial and

violated his constitutional rights to due process and a fair trial.

Since defendant did not object to these references at trial, our

review is governed by the plain error standard. R. 2:10-2. "Any

error or omission shall be disregarded by the appellate court

unless it is of such a nature as to have been clearly capable of

producing an unjust result. . . ." Ibid.; see State v. Galicia,

210 N.J. 364, 386 (2012).

 In support of his argument, defendant cites our decisions in

State v. Salaam, 225 N.J. Super. 66 (App. Div.), certif. denied,

111 N.J. 609 (1988), and State v. Paduani, 307 N.J. Super. 134

(App. Div.), certif. denied, 153 N.J. 216 (1998). However, in

Salaam, we recognized that "the majority of decisions involving

this issue hold that the admission of irrelevant aliases into

evidence will not afford a basis for reversal unless some tangible

form of prejudice is demonstrated, i.e., where such names have

been intentionally offered as indicia of guilt." Salaam, supra,

225 N.J. Super. at 73. We declined to reverse defendant's

conviction, noting that the references to defendant's alias

"neither compromised defendant's right to have the jury evaluate

the merits of his defense nor prejudiced his right to a fair

 19 A-5382-14T1
trial." Id. at 76. Similarly, in Paduani, we stated "[t]he use

of defendant's street nickname during trial cannot serve as a per

se predicate for reversal." Paduani, supra, 307 N.J. Super. at

146. We found the reference to defendant's nickname was

 clearly relevant because each defendant was
 identified to the police by use of a nickname.
 In fact, defense counsel during trial
 referenced defendant by use of his nickname.
 Moreover, defendant has pointed to no tangible
 form of prejudice attributable to the use of
 his nickname during trial and our independent
 review of the record reveals none.

 [Id. at 147.]

 In the present case, the admission of defendant's street name

was proper because it was relevant to the State's case. As in

Paduani, defendant was known to Spence by his street name, Cuckoo,

and he identified to police by this name. Similar to Paduani,

defense counsel on several occasions also referred to other persons

present at the Nieves's apartment by their nicknames when

questioning witnesses and during summation. Accordingly, we

discern no plain error in the prosecutor's references to

defendant's street name.

 IV.

 Finally, defendant argues that his aggregate fifty-eight year

sentence with a NERA parole disqualifier is excessive. He further

contends the trial court improperly applied aggravating factor

 20 A-5382-14T1
two, N.J.S.A. 2C:44-1(a)(2), the gravity and seriousness of harm

inflicted upon the victim, while failing to apply mitigating factor

four, N.J.S.A. 2C:44-1(b)(4), that there were grounds tending to

excuse or justify defendant's conduct. We disagree.

 Sentencing determinations are reviewed on appeal with a

highly deferential standard. State v. Fuentes, 217 N.J. 57, 70

(2014). "The appellate court must affirm the sentence unless (1)

the sentencing guidelines were violated; (2) the aggravating and

mitigating factors found by the sentencing court were not based

upon competent and credible evidence in the record; or (3) 'the

application of the guidelines to the facts of [the] case makes the

sentence clearly unreasonable so as to shock the judicial

conscience.'" Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65

(1984)). Once the trial court has balanced the aggravating and

mitigating factors set forth in N.J.S.A. 2C:44-1(a) and -1(b), it

"may impose a term within the permissible range for the offense."

State v. Bieniek, 200 N.J. 601, 608 (2010); see also State v.

Case, 220 N.J. 49, 65 (2014) (instructing that appellate courts

may not substitute their judgment for that of the sentencing court,

provided that the "aggravating and mitigating factors are

identified [and] supported by competent, credible evidence in the

record").

 21 A-5382-14T1
 In sentencing defendant, in addition to aggravating factor

two, the court found significant the following aggravating

factors: (1) the risk of re-offense (factor three), N.J.S.A. 2C:44-

1(a)(3); (2) the extent of defendant's prior criminal record and

the severity of those offenses (factor six), N.J.S.A. 2C:44-

1(a)(6); and (3) the need for deterrence (factor nine), N.J.S.A.

2C:44-1(a)(9). The court found no mitigating factors.

 The court appropriately pointed out several important

considerations bearing on its sentencing analysis. First, the

court noted that defendant had both a lengthy juvenile and adult

criminal history. The court further noted that defendant "has

been offered diversionary opportunities, probation, and state-

level incarceration. Nothing has deterred him from his life of

crime. He is a persistent and violent offender with weapons

offenses and the only way that this [c]ourt can protect society

from him is to impose an extended term."

 Contrary to defendant's argument, "a conviction for attempted

murder does not require as one of its elements that any injury be

inflicted." State v. Noble, 398 N.J. Super. 574, 599 (App. Div.),

certif. denied, 195 N.J. 522 (2008). Here, the trial judge

"note[d] that the victim has sustained a gunshot wound. The bullet

is still lodged in his body. He is paralyzed essentially from his

mid-section down[.]" Accordingly, the extent of the injury

 22 A-5382-14T1
defendant inflicted on Spence is a substantial aggravating factor,

as the judge properly found. Ibid.

 The judge found no mitigating factors applied, and we find

no basis in the record to disturb that reasoned conclusion. As

the court applied correct legal principles, and the sentence,

while undoubtedly severe, is amply supported by the record and

does not shock our judicial conscience, we decline to disturb it.

Roth, supra, 95 N.J. at 363-64.

 Affirmed.

 23 A-5382-14T1